THYPIN STEEL COMPANY, Plaintiff–Counter–Defendant–Appellee–Cross–Appellant,

Donbakraft Ltd., Claimant–Appellee–Cross–Appellant,

v.

ASOMA CORPORATION, Defendant–Counter–Claimant–Appellant–Cross–Appellee,

Certain Bills of Lading Issued For A Cargo of 3017 Metric Tons, More or Less, of Hot Rolled Steel Plate Laden on Board The M/V Geroi Panfilovsky, In Rem, Defendant–Counter–Claimant,

John Farkas, Ulrich Boenzli, Metall Und Rohstoff A.G., Defendants.

Docket Nos. 99–7302(L), 99–7658(XAP).

United States Court of Appeals, Second Circuit.

Argued: Jan. 26, 2000

Decided: May 25, 2000

Harold M. Kingsley, Kingsley & Kingsley, Hicksville, NY, for Defendant–Counter–Claimant–Appellant–Cross–Appellee Asoma Corporation.

Brian C. Dunning, Hoguet Newman & Regai, LLP, New York, NY for Defendant–Cross–Appellee Metall Und Rohstoff A.G.

Alfred J. Kuffler, Montgomery, McCracken, Walker & Rhoads, LLP, Philadelphia, PA (Howard J. Bashman, Montgomery, McCracken, Walker & Rhoads, LLP; William P. Larsen III, D'Amato & Lynch, New York, NY, of counsel), for Plaintiff–Counter–Defendant–Appellee–Cross–Appellant Thypin Steel Company and Claimant–Appellee–Cross–Appellant Donbakraft Ltd.

Before: VAN GRAAFEILAND, STRAUB, and POOLER, Circuit Judges.

STRAUB, Circuit Judge:

Appellant Asoma Corporation ("Asoma") appeals from a finding of admiralty *in rem* jurisdiction by the United States District Court for the Southern District of New York (Robert P. Patterson, *Judge*) certified to this court under 28 U.S.C. § 1292(b). Plaintiffs Thypin Steel Company ("Thypin") and Donbakraft Ltd. ("Donbakraft") cross-appeal from the District Court's order dismissing Metall und Rohstoff A.G. ("Metall") for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and dismissing the conversion and tortious interference with contract claims against Asoma for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons that follow, we hold that the District Court properly found admiralty jurisdiction based on a maritime contract and dismiss the cross-appeal for lack of appellate jurisdiction.

**BACKGROUND**

By a verified admiralty complaint dated March 25, 1996, Thypin, a corporation organized and existing under the laws of the State of New York, brought an *in rem* action in district court claiming ownership of a bill of lading[1] covering a cargo of steel en route from the Ukraine to Houston. Thypin alleged that it had contracted with Donbakraft, an importer/exporter incorporated in Minnesota, to purchase 20,000 metric tons of newly produced steel plate conforming to certain specifications; that Donbakraft in turn had a contract with J.V. Fistag–Victoriya, a Ukrainian–Swiss supplier, for that amount of steel with delivery to be "FOB stowed vessel"[2] and with payment to be made upon presentation of "[t]wo full sets of original clean on board bills of lading issued to the name of the Buyer [Donbakraft] or its order"; that Thypin was Donbakraft's assignee of Donbakraft's contract with Fistag–Victoriya; that Thypin and Donbakraft had made an advance payment of over two million dollars for such steel; and that 3017 metric tons of steel plate matching Thypin's specifications and procured by Fistag–Victoriya were delivered by a Fistag–Victoriya affiliate to Metall und Rohstoff A.G. ("Metall"), a Swiss company engaged in steel trading. Asoma, a New York-based corporation which trades in steel products, also claims entitlement to the cargo of steel. Asoma alleges that it purchased the steel from Metall, which assumed responsibility under the contract for shipping the goods.

The cargo of steel that is the focus of this action was shipped under a bill of lading that was dated January 25, 1996, and issued by the master of the M/V GER-OI PANFILOVSKY, the vessel that was chartered by Metall to transport the goods overseas. This bill of lading designates "Ukranian–Swiss JV Fistag Victory" ("Fistag") as the shipper and Metall as consignee "to order of Donbakraft, Ltd." The bill of lading was not endorsed by Donbakraft, the party to whose order the bill of lading

---

1. "In cases of common carriage, a bill of lading has a threefold purpose: It is a receipt for the cargo, it is the contract of carriage, and, when it is in negotiable form, it is an indicia of title to the cargo." 2A *Benedict on Admiralty* § 31, at 4–1 (7th ed.1999) (citing *Pollard v. Vinton*, 105 U.S. 7, 26 L.Ed. 998 (1881); *THE DELAWARE*, 81 U.S. (14 Wall.) 579, 20 L.Ed. 779 (1871); *Vanderbilt v. Ocean S.S. Co.*, 215 F. 886 (2d Cir.1914)).

2. In an F.O.B. ("free on board") contract, the seller must deliver the goods to the vessel named and has the risk of loss until the goods reach that location. *Black's Law Dictionary* 676 (7th ed.1999).

is written, but by Metall to Asoma, which held the bill when Thypin brought its claim in district court.

On March 26, 1996, the District Court issued an *ex parte* order authorizing the issuance of a warrant for the arrest of the bill of lading. On March 28, 1996, the District Court held a post-arrest hearing pursuant to Rule E of the Supplemental Rules for Certain Admiralty and Maritime Claims, and received additional evidence on April 4 and 11, 1996.

In an opinion and order dated May 1, 1996, the District Court found admiralty jurisdiction based on Thypin's allegations of conversion of goods which "took place when the steel was transported from the shore onto the vessel and the Bill of Lading evidencing a change of title was issued by the carrier." *Thypin Steel Co. v. Certain Bills of Lading*, No. 96 CIV 2166(RPP), 1996 WL 223896, at *3 (S.D.N.Y. May 2, 1996). In this opinion and order, the District Court also found that the arrest of the bill of lading was supported on reasonable grounds and that Thypin was entitled to discovery prior to a final disposition of its claim. *See id.* at *5.

On May 3, 1996, the District Court conducted a hearing to determine the amount that Asoma would post as a bond to secure the release of the bill of lading; this sum was determined to be $700,000. Asoma posted this bond on May 21, 1996, and the bill of lading was released. In late May 1996, the vessel M/V GEROI PANFILOV-SKY arrived in Houston and discharged the cargo of steel.

On August 2, 1996, the District Court granted Asoma's motion pursuant to 28 U.S.C. § 1292 for certification of immediate appeal of the May 1, 1996 order. On April 29, 1997, this Court issued a Mandate remanding the issue of jurisdiction to permit Thypin to amend its pleading to assert its new bases for jurisdiction and to enable the District Court to rule on all available bases of jurisdiction prior to appellate review.

Thypin filed an amended complaint on May 30, 1997, adding Donbakraft as a plaintiff and Metall, Ulrich Boenzli ("Boenzli"), and John Farkas ("Farkas")[3] as defendants. In addition, Thypin added claims of fraud, conspiracy to defraud, tortious interference with contract, and conversion against the new *in personam* defendants, and a civil RICO claim. In July 1997, *in rem* claimant Asoma and *in personam* defendants Asoma, Metall, Boenzli, and Farkas filed motions to dismiss the complaint; quash the *in rem* arrest of the bill of lading and release the bond posted by Asoma; and stay discovery pending resolution of the motion to dismiss and quash discovery on the personal jurisdiction issue. On August 27, 1997, defendants moved for Rule 11 sanctions against plaintiffs for including a civil RICO claim in their amended complaint. In an opinion and order dated December 28, 1998, the District Court: (1) denied defendants' motion to dismiss the *in rem* claim for lack of admiralty jurisdiction, but stayed discovery pending appeal and directed that the bond posted by Asoma on May 21, 1996, remain in place; (2) granted defendants' motion to dismiss Boenzli, Farkas, and Metall as defendants for lack of personal jurisdiction; (3) granted defendants' motion to dismiss the maritime tort claims for fraud and conspiracy with respect to all defendants; (4) granted defendants' motion to dismiss the maritime tort claims for tortious interference with contract and conversion on substantive grounds with respect to defendants Boenzli, Farkas, and Asoma, and, because the District Court held that it lacked personal jurisdiction over Metall, found these claims to be effectively dismissed as against Metall as well;

---

**3.** Ulrich Boenzli, a citizen of Switzerland who was responsible for processing and shipping orders of steel and pig iron to companies across Europe, Asia, and the United States during the time period in question, acted for Metall in connection with the purchase of the steel cargo at issue in this matter. John Farkas is a citizen of New Jersey who was Senior Vice President of the steel division at Asoma at all relevant times.

(5) dismissed plaintiffs' RICO claim with prejudice; (6) granted defendants' motion to quash discovery on the personal jurisdiction issue without prejudice; and (7) denied defendants' motion for sanctions. *See Thypin Steel Co. & Donbakraft Ltd. v. Certain Bills of Lading,* No. 96CIV2166 (RPP), 1998 WL 912100, at *7 (S.D.N.Y. Dec.30, 1998). The District Court issued a certificate of immediate appeal pursuant to 28 U.S.C. § 1292(b) on the *in rem* admiralty jurisdiction question. *See id.* at *3.

In an opinion and order dated March 1, 1999, the District Court denied plaintiffs' motion for reconsideration of those aspects of its opinion and order dated December 30, 1998, which (1) dismissed plaintiffs' claims against defendant Metall for lack of personal jurisdiction; (2) granted defendants' motion to quash discovery on the personal jurisdiction issue pending appeal; (3) dismissed plaintiffs' conversion and tortious interference with contract claims against defendant Asoma; and (4) granted a certificate of immediate appeal on the issue of whether the District Court properly exercised admiralty jurisdiction over plaintiffs' *in rem* claim. *See Thypin Steel Co. & Donbakraft Ltd. v. Certain Bills of Lading,* No. 96CIV2166 (RPP), 1999 WL 108728 (S.D.N.Y. Mar.3, 1999).

This timely appeal followed.

## DISCUSSION

### I. *Admiralty Jurisdiction*

■ The District Court found that admiralty jurisdiction existed based on the bill of lading, a maritime contract between Donbakraft (which assigned its rights to Thypin) and J.V. Fistag–Victoriya. *See Thypin Steel Co.,* 1998 WL 912100, at *3. We review the District Court's factual findings for clear error and its legal conclusions *de novo. See LeBlanc v. Cleveland,* 198 F.3d 353, 356 (2d Cir.1999).

■ "The boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). Admiralty jurisdiction extends only to wholly maritime contracts or severable maritime portions of mixed contracts. *See Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 775 F.Supp. 101, 104 (S.D.N.Y.1991), *aff'd,* 968 F.2d 196, 199 (2d Cir.1992). Jurisdiction depends, in cases of contract, "upon the nature of the contract, and is limited to contracts, claims and services purely maritime, and touching rights and duties appertaining to commerce and navigation." *S.S. ECLIPSE,* 135 U.S. 599, 608, 10 S.Ct. 873, 34 L.Ed. 269 (1890). *See also Ingersoll Milling Mach. Co. v. M/V BODENA,* 829 F.2d 293, 302 (2d Cir.1987) ("If the subject matter of the contract relat[es] to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment it is fairly said to constitute a maritime contract.") (internal quotation marks omitted), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988).

■ On appeal, Asoma argues that this matter is merely a non-maritime dispute between two New York merchants over the title to cargo, a shipment of steel, based on a purchase agreement which does not involve the operation, navigation, or management of a ship. We disagree.

■ A bill of lading for ocean carriage is a maritime contract. *See Leather's Best, Inc. v. S.S. MORMACLYNX,* 451 F.2d 800, 807 (2d Cir.1971); *Luckenbach S.S. Co. v. Coast Mfg. & Supply Co.,* 185 F.Supp. 910, 915–16 (E.D.N.Y.1960) ("A contract for ocean transportation of cargo such as set forth in the bill of lading herein, is a classical example of a maritime contract."); *see also* 1 *Benedict on Admiralty* § 189[a], at 12–36 ("A bill of lading contract between cargo owner and common carrier, as well as a dock receipt issued by a carrier before a bill of lading has been issued, are maritime instruments and rights and liabilities between the par-

ties arising out of those contracts may be litigated in a federal court based on its admiralty jurisdiction, even though the causes of action arise on land."); *cf. Cary Marine, Inc. v. Motorvessel Papillon,* 872 F.2d 751, 754–55 (6th Cir.1989) (a purchase agreement for the sale of a vessel is not a maritime contract and a breach of one, therefore, does not give rise to admiralty jurisdiction); *Gaster Marine Recovery & Sales, Inc. v. M/V THE RESTLESS I,* 33 F.Supp.2d 1333, 1334 (S.D.Fla.1998) (a contract for the sale of a vessel is not within federal courts' admiralty jurisdiction).

· In this case, Metall, the consignee, contracted with J.V. Fistag–Victoriya, the shipper, to deliver goods via the vessel M/V GEROI PANFILOVSKY to the order of Donbakraft, the designated recipient specified in the bill of lading, for discharge in Houston. It is evident from the bill of lading that the shipper and the consignee contracted to ship the steel plates by vessel over navigable waters to the Houston City Docks, North Side. Accordingly, the bill of lading that is at the center of the current dispute is not merely a non-maritime purchase agreement between merchants for the purchase of maritime cargo, as Asoma contends, but, rather, is a maritime contract that involves the transportation of goods over navigable waters.

While it is true that the mere handling or forwarding of a bill of lading does not convert a simple contract claim into an admiralty claim, *see, e.g., United States v. M/V SANTA CLARA I,* 859 F.Supp. 980, 991 (D.S.C.1994); *Lunsford v. Farrell Shipping Lines, Inc.,* No. 83CIV7462, 1991 WL 150596, at *5 (S.D.N.Y. July 26, 1991); *cf. Johnson Prods. Co. v. M/V La Molinera,* 619 F.Supp. 764, 766–67 (S.D.N.Y.1985), Thypin's and Donbakraft's *in rem* claim arises under and is based on their purported entitlement to the bill of lading—Donbakraft as the designated recipient of the cargo in the negotiable bill of lading with the right to control the consignment, and

Thypin as Donbakraft's assignee. *See* 1 *Benedict on Admiralty* § 191[b], at 12–51 to –52 ("The cases are clear that the consignee named in a bill of lading is a proper party-plaintiff, his title being presumed by virtue of being named consignee."); *id.* § 191[d], at 12–54 ("Under present decisions there appears to be no doubt of the right of a bare assignee to be a party-plaintiff in an admiralty cause of action."). Indeed, rights and liabilities between the parties arising out of a bill of lading contract may be litigated in a federal court based on its admiralty jurisdiction, even though the causes of action arise on land. *See id.* § 189[a], at 12–36; *see also David Crystal, Inc. v. The Cunard S.S. Co.,* 223 F.Supp. 273, 290–91 (S.D.N.Y.1963) ("There is no question but that the bill of lading is a maritime contract, that a suit for its breach is clearly within admiralty jurisdiction, and [the] named consignee . . . could have brought this suit. But the cause of action asserted by [the third-party plaintiff] is not premised on the bill of lading and it seems beyond question that in order for jurisdiction to be invoked on this basis, the bill of lading must be its bedrock.") (citations omitted), *aff'd on other grounds,* 339 F.2d 295 (2d Cir.1964), *cert. denied,* 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965).

In short, it is the bill of lading, a maritime contract, not the cargo, that is the *res* which confers admiralty jurisdiction upon this court, and it is the alleged misappropriation of this bill by both Asoma and Metall and the effort to obtain delivery from the vessel by the unauthorized presentation of the bill which relates to maritime commerce. While we recognize that the procedural posture of this case may be unusual in some respects—the traditional course of action, as Thypin acknowledged at oral argument, would have been to seize the cargo in Houston—the bill of lading whose ownership is at issue here provides for the transport of the cargo overseas and we find that this connection to maritime commerce is sufficient to justify the exer-

cise of admiralty jurisdiction in this case. *Cf. Atlantic Mut. Ins. Co.,* 968 F.2d at 200 (finding that the goods' connection with maritime commerce was too speculative to justify admiralty jurisdiction where the goods were never designated for marine transport).

The rationale for federal admiralty jurisdiction provides further support for a finding of admiralty jurisdiction in this case. "[T]he question of whether a dispute falls within admiralty jurisdiction cannot be divorced from the purposes for which admiralty and maritime jurisdiction was granted." *Id.* at 199 (internal quotation marks omitted). "[T]he protection of maritime commerce" is the "primary focus of admiralty jurisdiction." *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 674, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); *see also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 544, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) (same). Here, a dispute over title to or possession of a bill of lading, a maritime contract for ocean carriage, clearly implicates the fundamental federal interest in the protection of maritime commerce. We therefore hold that the District Court properly found admiralty jurisdiction over this dispute based on a maritime contract.[4]

## II. *Cross–Appeal*

In their cross-appeal, Thypin and Donbakraft seek to appeal the District Court's interlocutory order dismissing Metall for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and dismissing the conversion and tortious interference with contract claims against Asoma for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Asoma and Metall argue that this cross-appeal should be dismissed for lack of appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(3). For the reasons that follow, we agree.

### A. *Standard Under 28 U.S.C. § 1292(a)(3)*

Title 28, section 1292(a)(3) of the United States Code provides, in pertinent part, that appeals may be taken from "[i]nterlocutory decrees ... determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." Section 1292(a) is an exception to the general rule of finality stated in § 1291 and, as such, should be construed narrowly. *See Roco Carriers, Ltd. v. M/V NURNBERG EXPRESS,* 899 F.2d 1292, 1297 (2d Cir.1990) ("This exception to the final judgment rule has its historical origins in the once common practice in admiralty cases of referring the determination of damages to a master or commissioner after resolving the question of liability."); *Tradax Ltd. v. M.V. HOLENDRECHT,* 550 F.2d 1337, 1340–41 (2d Cir.1977) ("For this provision has been narrowly construed and basically limited to cases where there has been a determination of liability but not yet a computation of the damages.") (citations omitted), *abrogated on other grounds by Farrell Lines Inc. v. Ceres Terminals Inc.,* 161 F.3d 115 (2d Cir.1998); *Lowry & Co. v. S.S. LE MOYNE D'IBERVILLE,* 372 F.2d 123, 124 (2d Cir.1967) ("[T]he courts have consistently given [§§ 1291 and 1292(a)(3)] a narrow construction. Federal policy, as distinguished from that followed by some state judicial systems, is against piecemeal appeals."); *In re Wills Lines, Inc.,* 227 F.2d 509, 510 (2d Cir.1955) ("It has been repeatedly held, in this Circuit and elsewhere, that interlocutory decrees determining the rights and liabilities of the parties to admiralty cases means deciding the merits of the controversies between them.") (internal quotation marks omitted), *cert. denied,* 351 U.S. 917, 76 S.Ct. 709, 100 L.Ed. 1450 (1956). In accordance with the purpose for which the exception was crafted, we have construed the language in

---

**4.** Because we conclude that a maritime contract confers admiralty jurisdiction in this case, we need not address the plaintiffs' alternate bases for admiralty jurisdiction predicated on a maritime tort and the Admiralty Extension Act, 46 U.S.C. § 740.

§ 1292(a)(3) to mean "that we have jurisdiction over such an appeal when the court below, as is customary in admiralty, has entered an interlocutory decree deciding the merits of the controversy between the parties, but has left unsettled the assessment of damages or other details required to be determined prior to entry of a final decree." *Allen N. Spooner & Son, Inc. v. Connecticut Fire Ins. Co.*, 297 F.2d 609, 610 (2d Cir.1962) (per curiam); *Bergeron v. Koninklijke Luchtvaart Maatschappij*, 299 F.2d 78, 79 (2d Cir.1962) (per curiam) (same).

A narrow construction of this exception is consistent with the view shared by several of our sister circuits that appellate jurisdiction under § 1292(a)(3) should only be exercised where the order at issue conclusively determines the parties' substantive rights and obligations. In this regard, courts have declined to hear appeals from orders striking a claim for damages for loss of use of a plaintiff's vessel, *see, e.g., Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 77 F.3d 376, 377–78 (11th Cir.1996) (finding order nonappealable because it did not resolve the principal issue of liability—whether either of the defendants was responsible for the damage to the plaintiff's vessel); dismissing a complaint as to some defendants, *see, e.g., Seahorse Boat & Barge Corp. v. Jacksonville Shipyards, Inc.*, 617 F.2d 396 (5th Cir.1980) (per curiam); and refusing to dismiss a complaint, *see, e.g., Jack Neilson, Inc. v. Tug Peggy*, 428 F.2d 54, 55 (5th Cir.1970) (denial of motion based on lack of admiralty jurisdiction "did not go to the merits of the claim"), *cert. denied*, 401 U.S. 955, 91 S.Ct. 973, 28 L.Ed.2d 238 (1971).

Some courts certainly have expanded § 1292(a)(3)'s application and found that an order determines the rights and liabilities of the parties so long as it resolves a fairly separable claim or all matters involving a single party, *see e.g., Aparicio v. Swan Lake*, 643 F.2d 1109, 1113 n. 6 (5th Cir.1981) (finding that an order dismissing one of several separate claims for relief on

the merits is appealable in an admiralty case even though other claims arising from the same injury remained open); *Bradford Marine, Inc. v. M/V SEA FALCON*, 64 F.3d 585, 587–88 (11th Cir.1995) (finding that the final order entered against the vessel was appealable under § 1292(a)(3) even though there was no disposition of the *in personam* claim against its owner because the order decided the rights and liabilities as to the vessel); *Complaint of Nautilus Motor Tanker Co.*, 85 F.3d 105, 109–10 & n. 3 (3rd Cir.1996) (finding that the plaintiff shipowner in a limitation of liability proceeding could appeal an order that only decided a counterclaim and noting that "[t]o be appealable under section 1292(a)(3), an order in admiralty need not determine all rights and liabilities of all parties").

It is our view, however, that a narrow construction of § 1292(a)(3) better comports with the historical origin of the exception and this Circuit's precedent. Moreover, as a noted commentator has suggested, "arguments for expansive interpretation of § 1292(a)(3) are offset by the availability of [Federal] Rule [of Civil Procedure] 54(b) and the more recent adoption of 1292(b), which allows interlocutory appeals on permission of the trial court and appellate court in admiralty cases as well as in other cases." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3927 (2d ed.1996). Guided by these principles, we now turn to the order from which Thypin and Donbakraft cross-appeal, and address Asoma's and Metall's jurisdictional challenge.

### B. *Dismissal of Metall for Lack of Personal Jurisdiction*

■ Thypin and Donbakraft first seek to appeal the portion of the District Court's interlocutory order dismissing Metall for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). They argue for the exercise of appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(3) on the

ground that all of their claims against Metall have been effectively decided by Metall's dismissal from the suit. For the reasons that follow, we conclude that we do not have appellate jurisdiction over this matter.

While this Circuit has not had occasion to address this precise issue, that is, whether this Court can exercise jurisdiction pursuant to 28 U.S.C. § 1292(a)(3) over an order dismissing one party for lack of personal jurisdiction, the Fifth Circuit's decisions in *Seahorse Boat & Barge Corp. v. Jacksonville Shipyards, Inc.*, 617 F.2d 396 (5th Cir.1980) (per curiam) and *Allen v. Okam Holdings, Inc.*, 116 F.3d 153 (5th Cir.1997) (per curiam) are particularly instructive in this regard.

In *Seahorse*, the Fifth Circuit found that the dismissal for lack of personal jurisdiction did not "fall within the limited class of interlocutory appeals authorized by 28 U.S.C. § 1292(a)(3) relating to the rights and liabilities of parties in admiralty." 617 F.2d at 397. Similarly, in *Allen*, the Fifth Circuit concluded that the district court's dismissal of the defendant from the case neither affected the merits of the appellants' claim nor precluded the appellants from commencing and maintaining an independent action against the dismissed defendant in another forum, but only affected "how and where the rights and liabilities would be determined." 116 F.3d at 154 (internal quotation marks omitted).

We see no reason to reach a different result here. Although it may be true that the dismissal of Metall from the suit effectively resolved all of the plaintiffs' claims against Metall in the federal admiralty suit, *cf. Bradford Marine, Inc.*, 64 F.3d at 587–88, Metall's dismissal did not preclude Thypin and Donbakraft from commencing an independent action against Metall in another forum. *See Allen*, 116 F.3d at 154. Therefore, the order dismissing Metall for lack of personal jurisdiction only affected how and where Metall's rights would be determined but did not conclusively resolve the parties' substantive

rights or liabilities or the merits of the underlying controversy. *See Spooner*, 297 F.2d at 610.

In short, our review of the plain language of § 1292(a)(3), its historical origin, this Circuit's narrow construction of the exception, and pertinent case law compels the conclusion that the portion of the District Court's order dismissing Metall as a defendant for lack of personal jurisdiction is nonappealable.

**C. Dismissal of Conversion and Tortious Interference with Contract Claims against Asoma for Failure to State a Claim.**

 Thypin and Donbakraft also seek to appeal the portion of the District Court's order dismissing the conversion and tortious interference with contract claims against Asoma for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). We reject Thypin's and Donbakraft's arguments in support of exercising appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(3) with respect to the dismissal of these claims as well.

Although the interlocutory order from which Thypin and Donbakraft now seek to appeal dismissed all the *in personam* claims against Asoma, the essential question of liability regarding the ownership of the title of the bill of lading (with plaintiffs and Asoma as adverse claimants) remains to be determined. In *Bergeron*, 299 F.2d at 79, we found no basis for appeal from an order which dismissed six of nine causes of action, but left open all of the questions of ultimate liability raised by the dismissed theories, *i.e.*, the basic issue of negligence. Similarly, in *Spooner*, we dismissed an appeal from an order granting a motion to dismiss an impleading petition where the merits of the libelant's claims, the respondent's defenses, and the impleading petition were not adjudicated by the ruling below. *See* 297 F.2d at 610; *see also THE MARIA*, 67 F.2d 571 (2d Cir.1933) (per curiam) (dismissing an appeal for lack of

appellate jurisdiction under 28 U.S.C. § 227, § 1292(a)(3)'s precursor, on the ground that "all of the 'merits'" had not yet been decided because the disputed material question of the vessel's seaworthiness remained open).[5] Here, because Asoma's rights and liabilities as to the bill of lading have yet to be determined, we conclude that the appeal from the portion of the District Court's order dismissing the conversion and tortious interference claims against Asoma is premature at this time.

In sum, because the cross-appeal is from a nonappealable order that does not determine the parties' substantive rights and obligations, this Court does not have jurisdiction under § 1292(a)(3) to entertain it. Accordingly, the cross-appeal is dismissed.

### III. Supplemental Rules for Certain Admiralty and Maritime Claims

■ On appeal, Asoma challenges Thypin's and Donbakraft's arrest of the bill of lading pursuant to Supplemental Rule D for Certain Admiralty and Maritime Claims. Thypin and Donbakraft maintain that Supplemental Rule D,[6] entitled "Possessory, Petitory and Partition Actions,"[7]

supplies the necessary basis to support the arrest of the bill of lading. Asoma argues, in contrast, that Supplemental Rule C,[8] entitled "Actions In Rem: Special Provisions," provides the appropriate procedure for arrest of property in an *in rem* proceeding and that Rule C by its terms specifically excludes plaintiffs' claim from the ambit of admiralty *in rem* arrest since it requires that a maritime lien authorizing *in rem* arrest be pleaded. For the reasons discussed below, we find that the bill of lading was properly arrested pursuant to Supplemental Rule D.

Supplemental Rule D explicitly applies to an *in rem* action to acquire title to maritime property. *See* Fed.R.Civ. P.Supp.R.D. Plaintiffs' *in rem* action is a possessory suit to recover the bill of lading and, likewise, the cargo, based on a maritime contract. *See Dluhos v. Floating & Abandoned Vessel,* 162 F.3d 63, 68 (2d Cir.1998) (interpreting Rule D as providing the mechanism for the arrest of a *res* in an *in rem* action and affirming the dismissal of the complaint where plaintiff did not move pursuant to Rule D for a

---

**5.** In *Isbrandtsen Tankers, Inc. v. President of India,* 446 F.2d 1198, 1199 n. 1, (2d Cir.), *cert. denied,* 404 U.S. 985, 92 S.Ct. 452, 30 L.Ed.2d 369 (1971), we concluded that an order dismissing a cause of action on immunity grounds was appealable where the parties assumed that the order was appealable under § 1292(a)(3) even though the other claims in the admiralty complaint remained unresolved. It is not clear, however, on what grounds the *Isbrandtsen* Court rested its conclusion "that the appeal will lie," for no analysis was presented. 446 F.2d at 1199 n. 1. To the extent that *Isbrandtsen* may be in tension with other precedent, namely, *Bergeron,* 299 F.2d at 78; *Spooner,* 297 F.2d at 610; and *THE MARIA,* 67 F.2d at 571, we find that the narrow approach to appellate jurisdiction over admiralty interlocutory orders advanced in this established line of precedent is warranted in this case.

**6.** Supplemental Rule D provides in pertinent part:

> In all actions for possession, partition, and to try title maintainable according to the course of the admiralty practice with re-

spect to a vessel, in all actions so maintainable with respect to the possession of cargo or other maritime property ... the process shall be by a warrant of arrest of the vessel, cargo, or other property....

Fed.R.Civ.P. Supp. R. D.

**7.** "Petitory suits are suits in which it is sought to try the title to a ship independently of any possession of the vessel" [while] "possessory actions are actions to recover vessels or other property to which an owner, seaman or lienor is of right entitled." 1 *Benedict on Admiralty* § 201, at 13–1 to –2; *see also Cary Marine v. Motorvessel Papillon,* 872 F.2d 751, 756 (6th Cir.1989) ("A possessory action permits a party to adjudicate the right to possession of property that has wrongfully been taken.").

**8.** Supplemental Rule C provides in pertinent part:

> (1) An action in rem may be brought: (a) To enforce any maritime lien; (b) Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto....

Fed.R.Civ.P. Supp. R. C.

warrant of arrest of the vessel); 1 *Benedict on Admiralty* § 201, at 13–2 n. 4 (categorizing a suit to recover cargo based on a maritime tort or contract as a possessory action (subject to Rule D)); *cf. Cary Marine*, 872 F.2d at 756–57 (Rule D governing possessory actions is unavailable where admiralty jurisdiction did not independently exist because plaintiff's claim to the vessel arose out of a non-maritime purchase agreement); *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 93–95 (1st Cir.1993) (dismissing plaintiff's *in rem* claim against the scallops under Rule D for lack of admiralty jurisdiction, on the ground that plaintiff had not satisfied the situs prong of the jurisdiction test for tort claims, without addressing the propriety of moving under Rule D). Since Rule D explicitly applies to an *in rem* possessory action to acquire title to maritime property, a category under which a bill of lading clearly falls, we see no error in plaintiffs' arrest of the bill of lading pursuant to Rule D.

## CONCLUSION

We hold that the District Court properly found admiralty jurisdiction based on a maritime contract. We dismiss the cross-appeal for lack of appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(3). Asoma shall bear the costs on its appeal; Thypin and Donbakraft shall bear the costs on their cross-appeal.