356 F.3d 381
 Philip BECKER, Patricia Becker, John F. Jurgens, Gail Jurgens, Bridget Jurgens and Kate Jurgens, Plaintiffs-Appellees,
v.
POLING TRANSPORTATION CORPORATION, Chester A. Poling, Inc., Motor Vessel Poling Bros. No. 9 Inc., Anthony J, Clara P, Jeanne C, their tackle, engines and appurtenances, etc. In Rem, Ultimate Transport Inc., Janet Mahland and Mabel L. Poling Corp., Defendants,
Metro Fuel Oil Corporation and Metro Terminals Corp., Defendants-Appellants.
 Docket No. 02-7707(L).
 Docket No. 02-7713(CON).
 Docket No. 02-7773(CON).
 United States Court of Appeals, Second Circuit.
 Argued: May 14, 2003.
 Decided: February 2, 2004.
 Modified: February 27, 2004.
 
 Appeal from the United States District Court for the Eastern District of New York, Robert M. Levy, United States Magistrate Judge.
 Andrew Zajac, Fiedelman & McGaw, Jericho, New York, and Jacobowitz, Garfinkel & Lesman, New York, New York, for Defendants-Appellants.
 Paul T. Hofmann, Cappiello Hoffman & Katz, P.C., New York, New York, for the Becker Plaintiffs-Appellees.
 Lee F. Bantle, Bantle & Levy, LLP, New York, New York, for the Jurgens Plaintiffs-Appellees.
 Before: WINTER, KATZMANN, Circuit Judges, and GOLDBERG, Judge.*
 WINTER, Circuit Judge.
 
 
 1
 Metro Fuel Oil Corp. and Metro Terminals Corp. (collectively, "Metro") appeal from a judgment entered after a jury trial before Magistrate Judge Levy holding Metro liable to Philip Becker ("Becker") and John Jurgens ("Jurgens") for injuries sustained when a petroleum transfer operation resulted in a fire. The magistrate judge held Metro vicariously liable for the negligence of its independent contractor, Ultimate Fuel Transportation, Inc. ("Ultimate"). Ultimate had settled with appellees before trial, and the district court set off from the total damages found by the jury the amount of the settlement.
 
 
 2
 On appeal, Metro argues that: (i) it is not vicariously liable for Ultimate's negligence; (ii) Becker's and Jurgens' settlement with Ultimate bars any recovery from Metro; and (iii) Becker's and Jurgens' actions in conducting the transfer operation constituted a superseding, intervening cause of their injuries. Appellees argue that the setoff based on the settlement was error.
 
 
 3
 We hold that Metro was directly and jointly and severally liable to Becker and Jurgens because of Metro's negligence in selecting Ultimate to perform the work in question. We also hold that Becker's and Jurgens' actions were not as a matter of law a superseding, intervening cause of their injuries. Because there was no cross-appeal, we cannot enlarge the judgment by eliminating the setoff and do not address appellees' argument in that regard. Accordingly, we affirm.
 
 BACKGROUND
 
 4
 a) Facts
 
 
 5
 We view the facts in the light most favorable to appellees, who prevailed before the jury. Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir.1998).
 
 
 6
 Becker and Jurgens were employed by Poling Transportation Corporation ("Poling"). On August 18, 1995, they were severely burned in a fire that occurred while they were transferring petroleum from the CLARA P, a decrepit barge, to a truck that was parked dockside. The CLARA P was owned by Poling but was about to be sold. The terms of the sale required that the barge be delivered empty to the buyer. Poling's dispatcher, Rick Carment, called Joseph Squadritto, the Director of Marketing at Metro, to see if Metro was interested in the petroleum that was to be removed from the CLARA P. Carment offered the petroleum free of charge if Metro arranged for a pickup. Squadritto went to the Poling yard for a sample of the petroleum and agreed that Metro would take it.
 
 
 7
 Carment advised Squadritto that a vacuum truck was needed to transfer the product because the pumping mechanism on the CLARA P was defunct. Squadritto then asked Ultimate to pick up the petroleum, even though Squadritto knew that Ultimate did not have a vacuum truck.
 
 
 8
 On the day of the fire, Becker and Jurgens were assigned, first, to pump water and, second, the petroleum from the CLARA P. Jurgens had been told that there was some urgency to emptying the barge and emptied the water with a portable pump in the morning. Carment told Jurgens that a vacuum truck would be coming to remove the product later that afternoon and directed Jurgens to oversee the transfer. At about 5:30 p.m., an Ultimate truck arrived at the Poling yard. Neither Jurgens, Becker, nor the Ultimate driver appear ever to have transferred petroleum from ship to truck, or to have received training on how to do so. The Ultimate truck was not a vacuum truck, and the driver informed Jurgens and Becker that Ultimate did not, in fact, have vacuum trucks. At this point Jurgens, Becker, and the Ultimate driver conferred and decided to use the portable pump that had been used earlier that day to transfer the water. The pump was used to fill the first holding compartment of the truck uneventfully. The pump was then shut down, and the hose was switched to the next compartment. When the pump was restarted, a fire broke out on the CLARA P burning both Becker and Jurgens. There is no serious dispute that the fire was caused by the use of the portable pump instead of a vacuum truck.
 
 
 9
 b) Proceedings in the District Court
 
 
 10
 Becker and Jurgens brought the present action against Poling, Ultimate, and Metro, asserting claims under the Jones Act, 46 U.S.C.App. § 688, and general maritime law. Ultimate defaulted and eventually paid Becker and Jurgens $250,000 each in exchange for the settlement of their claims against Ultimate and their agreement to "indemnify, defend, and hold harmless [Ultimate] against any and all claims and cross claims asserted by the other defendants..., including any and all claims for contractual and/or common law indemnification." Becker v. Poling Transp. Corp., No. 96 CV 1768, slip op. at 2 (E.D.N.Y. May 23, 2002) (magistrate judge's Memorandum and Order). Poling filed for bankruptcy, and Metro was the only defendant to appear at trial.
 
 
 11
 Prior to trial, Metro moved for summary judgment on two grounds: (i) it had no duty to the plaintiffs because it did not own the barge or the pump and did not control the manner in which the work was performed; and (ii) appellees' actions were, as a matter of law, a superseding, intervening cause of the accident. The late Judge Nickerson denied Metro's motion and held that triable issues existed as to whether Metro was liable. Becker, No. 96 CV 1768 (E.D.N.Y. Sept. 19, 2000) (district court's Memorandum and Order). The district court stated that Metro might be liable for Ultimate's negligence under theories of agency, vicarious liability (if Ultimate was an independent contractor and the jury determined that the work was inherently dangerous, Alva Steamship Co., Ltd. v. City of New York, 616 F.2d 605, 610 (2d Cir.1980)), Becker, slip op. at 21-38 (district court's Sept. 19, 2000 Memorandum and Order), and on a theory of negligent hiring, id. at 35.
 
 
 12
 A jury trial was held and presided over by Magistrate Judge Levy. Damages were to be found and, if appropriate, apportioned only after liability was determined. As to liability, the jury was given a special verdict form, and the pertinent questions and the jury's answers are as follows:
 
 
 13
 1. In regard to the occurrence of August 18, 1995, have the plaintiffs, John Jurgens and Philip Becker, established by a preponderance of the evidence that Metro hired Ultimate Transport as an independent contractor to conduct the transfer operation? YES
 
 
 14
 * * * * * *
 
 
 15
 3. Have the plaintiffs established by a preponderance of the evidence that the work involved in the transfer operation on August 18, 1995 was inherently dangerous?
 
 YES
 
 16
 4. Have the plaintiffs established by a preponderance of the evidence:
 
 
 17
 (A) That Ultimate lacked the competence to perform the work for which Metro hired it AND
 
 
 18
 (B) That Metro knew, or in the use of reasonable care should have known, that Ultimate was not qualified to undertake the work?
 
 YES
 
 19
 * * * * * *
 
 
 20
 7. In regard to the occurrence of August 18, 1995, have the plaintiffs established by a preponderance of the evidence that Ultimate was negligent?
 
 YES
 
 21
 8. Have the plaintiffs established by a preponderance of the evidence that Ultimate's negligence was a substantial cause of the plaintiffs' injuries?
 
 YES
 
 22
 No question was posed to the jury as to whether Metro's negligent selection of Ultimate, as found in the answers to Question 4, was the substantial or proximate cause of appellees' injuries.[1] The jury also found that although Poling was negligent, its negligence was not a cause of Becker's and Jurgens' injuries, and that neither Becker nor Jurgens was negligent.
 
 
 23
 A chambers conference was then held. Counsel for all parties agreed that the jury had determined Ultimate to be 100% at fault. They also agreed not to have the jury apportion liability between Ultimate and Metro, apparently on the assumption that vicarious liability was the only form of liability applicable to Metro. The jury was then asked to find damages.
 
 
 24
 The jury awarded Jurgens $530,000 and awarded Becker $505,000, for past and future pain and suffering and medical expenses, and for past lost income. The total award for both Jurgens and Becker amounted to $1,035,000.
 
 
 25
 Magistrate Judge Levy concluded that the jury had found Metro liable for Ultimate's negligence under two theories. First, although Ultimate was an independent contractor, the work contracted for was "inherently dangerous," thus creating vicarious liability on the part of Metro. Becker, slip op. at 6 (magistrate judge's May 23, 2002 Memorandum and Order). See Alva Steamship, 616 F.2d at 610 ("Where the activity performed by the contractor is an inherently dangerous one, the negligence of the contractor may be imputed to the employer."). Second, Metro was liable for negligently selecting Ultimate, a carrier without a vacuum truck. Becker, slip op. at 6 (magistrate judge's May 23, 2002 Memorandum and Order). The negligent selection theory raised a question as to the type of liability it would create for Metro: direct or vicarious. Magistrate Judge Levy explained:
 
 
 26
 Since the parties and the court all assumed that both of these theories [inherently dangerous activity and negligent hiring] raised only vicarious liability claims against Metro, the jury was not asked whether Metro's negligence in hiring Ultimate was a substantial or proximate cause of the plaintiffs' injuries. Nor was the jury asked to apportion fault between Metro and Ultimate, since all of the parties assumed that the verdict made Ultimate 100 percent negligent and Metro vicariously liable for that negligence.... Metro falls into the unusual — and perhaps unique — category of being a defendant that is both negligent and vicariously liable, but not a direct tortfeasor.
 
 
 27
 Id. Despite a substantial discussion indicating his belief that Metro's negligent hiring of Ultimate created a form of direct liability, the magistrate judge considered his options limited by the absence of a proximate cause jury finding as to that type of negligence, and consequently concluded that Metro could not be held directly liable. Instead, the magistrate judge appears to have held Metro only vicariously liable for appellees' injuries resulting from its negligent selection of Ultimate. Id.
 
 
 28
 Having determined that Metro was only vicariously liable, the magistrate judge then considered whether Ultimate's settlement with Becker and Jurgens should reduce the $1,035,000 damages award against Metro. The magistrate judge declined to apply McDermott, Inc. v. AmClyde, 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), which holds that, when two or more parties have contributed to a plaintiff's injury, liability must be allocated proportionately and a settlement by one tortfeasor does not change the exposure of a non-settling joint tortfeasor. The magistrate judge held that McDermott is applicable only where the settling and non-settling defendants are joint tortfeasors but not applicable where, as here, a party — Metro — is only vicariously liable for another party's — Ultimate's — negligence. Becker, slip op. at 9, 13 (magistrate judge's May 23, 2002 Memorandum and Order). The magistrate judge also rejected Metro's argument that, when one tortfeasor is 100 percent liable — everyone apparently assumed Ultimate was — and has discharged its responsibility by settling, there is no remaining liability for which a vicariously liable party can be held responsible. Id. at 13-14. After reviewing the divided authority on the issue, the magistrate judge entered judgment against Metro for the amount of the verdict, with a setoff for the amount of Becker's and Jurgens' settlement with Ultimate. The resulting judgment was in the amount of $535,000 — $255,000 for Becker and $280,000 for Jurgens. Id. at 16. Metro appealed; Becker and Jurgens did not cross-appeal.
 
 DISCUSSION
 
 29
 Most of the complications of this case arise from the failure of one or another party to observe substantive, procedural, or even jurisdictional rules. In the end, however, many of the omissions turn out to be offsetting. We begin with an examination of our appellate jurisdiction.
 
 
 30
 a) Jurisdiction
 
 
 31
 Because a federal court must consider on its own motion whether federal subject matter or appellate jurisdiction exists in the case before it, we raised a question as to appellate jurisdiction at argument. See Roco Carriers, Ltd. v. M/V Nurnberg Express, 899 F.2d 1292, 1294 (2d Cir.1990). Appellant answered our inquiries by relying on final judgment jurisdiction under 28 U.S.C. § 1291. However, the magistrate judge's ruling left unresolved Metro's claims against Ultimate for indemnity and contribution, which Metro had raised in its answers.[2] In urging that we had jurisdiction, appellant's counsel informed us at oral argument that Ultimate had never been served with those claims, but he also (somewhat inconsistently) declined expressly to abandon them so that jurisdictional doubts would be erased, see McManus v. Gitano Group, Inc., 59 F.3d 382, 383-84 (2d Cir.1995) (allowing party on appeal to create retroactively an appealable final judgment).
 
 
 32
 The claim against Ultimate may not have been served but it has also never been dismissed. The appeal is therefore interlocutory. See Lo Bue v. United States, 178 F.2d 528, 530-31 (2d Cir.1949) (where a pending indemnity claim in the district court had not been fully heard or not yet decided, the decree from which the appeal was taken was not final in the sense that it disposed of all the pending issues, and thus the appeal taken under 28 U.S.C. § 1291 did not provide appellate jurisdiction).
 
 
 33
 However, we also suggested at argument for the benefit of the parties, who were asked to brief the issue, that there might be an exception to 28 U.S.C. § 1291 in admiralty cases that allows review of some interlocutory appeals. In that regard, Section 1292(a)(3) provides, in pertinent part, that courts of appeals have jurisdiction to hear:
 
 
 34
 Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.
 
 
 35
 28 U.S.C. § 1292(a)(3). The Section 1292(a)(3) exception to the final judgment rule has its origins in the once common admiralty practice of referring the determination of damages to a master or commissioner after resolving the issue of liability. Roco Carriers, 899 F.2d at 1297.
 
 
 36
 As an exception to the general rule, Section 1292(a)(3) is construed narrowly. Thypin Steel Co. v. Asoma Corp., 215 F.3d 273, 279 (2d Cir.2000). It provides appellate "jurisdiction ... when the court below, as is customary in admiralty, has entered an interlocutory decree deciding the merits of the controversy between the parties, but has left unsettled the assessment of damages or other details required to be determined prior to entry of a final decree." Id. at 280 (quoting Allen N. Spooner & Son, Inc. v. Conn. Fire Ins. Co., 297 F.2d 609, 610 (2d Cir.1962) (per curiam)); Bergeron v. Koninklijke Luchtvaart Maatschappij, N.V., 299 F.2d 78, 79 (2d Cir. 1962) (per curiam) (same); see also Stolt Tank Containers, Inc. v. Evergreen Marine Corp., 962 F.2d 276, 278 (2d Cir. 1992).[3] Put simply, the crucial inquiry for purposes of Section 1292(a)(3) is whether the judgment has determined the rights and liabilities of the parties, which, under our cases, means "deciding the merits of the controversies between them." In re Wills Lines Inc., 227 F.2d 509, 510 (2d Cir.1955) (citation omitted). We believe that the judgment here meets that test.
 
 
 37
 Assuming for the moment causation with regard to appellees' injuries, the jury's affirmative answer to Question 4(A), (B) rendered Metro liable to Becker and Jurgens for its negligent act of hiring Ultimate — albeit at the time the parties construed the answer to impose only vicarious liability. The magistrate judge ruled that Metro was also vicariously liable for Ultimate's negligence because the jury had found that the work involved was inherently dangerous.
 
 
 38
 For reasons discussed at length infra, we cannot ignore the fact that the parties' assumption that the negligent hiring of Ultimate constituted only vicarious liability was a mistaken view of the law, and the answer to Question 4(A), (B) rendered Metro directly and jointly and severally liable for appellees' injuries. As a result, Metro's pending claims for contribution do not preclude an interlocutory appeal pursuant to Section 1292(a)(3) because its liability to appellees — and that of Poling as well — has been determined and is unaffected by the cross-claim or the indemnification clause in the Ultimate settlement.
 
 
 39
 This application of Section 1292(a)(3) is consistent with the holdings of other circuits. For example, in Nichols v. Barwick, 792 F.2d 1520, 1522 (11th Cir.1986), the plaintiff suffered injuries from some equipment on the defendants' ship. The plaintiff asserted various claims against the defendants and the defendants filed third party claims against the manufacturer of the equipment that had allegedly injured the plaintiff. The Eleventh Circuit asserted jurisdiction pursuant to Section 1292(a)(3) even though "no final decision has been entered on defendants' ... complaints" for indemnity and contribution. Id. We therefore conclude that we have appellate jurisdiction.
 
 
 40
 b) Applicable Law
 
 
 41
 Because Becker and Jurgens were seamen injured in navigable waters, maritime law governs their claims. See Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 253, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). "In admiralty cases, federal maritime law applies where it exists." Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse, 996 F.2d 506, 513 (2d Cir. 1993) (citing Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409-11, 74 S.Ct. 202, 98 L.Ed. 143 (1953)). Additionally, federal maritime law incorporates common law negligence principles generally, and New York law in particular. See Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc., 38 F.3d 1279, 1284 (2d Cir.1994); see generally Just v. Chambers, 312 U.S. 383, 388, 61 S.Ct. 687, 85 L.Ed. 903 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation.").
 
 
 42
 c) Metro's Liability
 
 
 43
 As a general rule, a party is not liable for the negligence of an independent contractor. See Rosenberg v. Equitable Life Assur. Soc'y of the United States, 79 N.Y.2d 663, 584 N.Y.S.2d 765, 595 N.E.2d 840, 842 (1992); Alva Steamship, 616 F.2d at 609. Under New York law, there is an exception to this general rule where the employer has hired an independent contractor for work that the employer "knows or has reason to know involves special dangers inherent in the work or dangers which should have been anticipated by the employer." Rosenberg, 584 N.Y.S.2d 765, 595 N.E.2d at 843. The parties dispute whether the jury's answers to the questions on the Special Verdict form imposed liability on this theory. However, we need not reach this issue because the jury's answers are clearly sufficient to impose direct, joint and several liability on Metro for its negligent selection of Ultimate to transport the petroleum.
 
 
 44
 A party is liable to an injured plaintiff where the party itself was negligent "in selecting, instructing, or supervising the contractor." Kleeman v. Rheingold, 81 N.Y.2d 270, 598 N.Y.S.2d 149, 614 N.E.2d 712, 715 (1993); see also Robinson v. Gov't of Malaysia, 269 F.3d 133, 145 (2d Cir.2001); Melbourne v. New York Life Ins. Co., 271 A.D.2d 296, 707 N.Y.S.2d 64, 67 (N.Y.App.Div.2000). In response to interrogatory 4, the jury found:
 
 
 45
 (a) that Ultimate lacked the competence to perform the work for which Metro hired it, and
 
 
 46
 (b) that Metro knew, or in the use of reasonable care should have known, that Ultimate was not qualified to undertake the work.
 
 
 47
 See Becker, slip op. at 3 (magistrate judge's May 23, 2002 Memorandum and Order). Metro does not, and cannot on this record, challenge this factual finding. As noted, however, no question was asked as to whether Metro's negligent selection of Ultimate was a substantial or proximate cause of appellees' injuries, without objection by Metro.
 
 
 48
 Immediately after the jury answered the verdict form's questions regarding liability, the parties appeared to view the jury's findings as imposing only vicarious liability on Metro for Ultimate's negligence. And, indeed, the New York courts have sometimes described negligent selection as an exception to the general rule of no liability for the negligence of independent contractors, thus implying vicarious liability. However, a reading of the caselaw and an examination of the nature of the negligent act itself demonstrates that such negligence is a form of direct liability. As Kleeman explained,
 
 
 49
 although often classified as an "exception," this category [negligent selection] may not be a true exception to the general rule, since it concerns the employer's liability for its own acts or omissions rather than its vicarious liability for the acts and omissions of the contractor.
 
 
 50
 598 N.Y.S.2d 149, 614 N.E.2d at 715 n. 1. See also Flood v. Re Lou Leasing Eng., 487 F.Supp. 364, 367 (E.D.N.Y.1980). The Restatement (Second) of Torts § 411 (1965), takes the same position: "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." Id.
 
 
 51
 Indeed, in the present matter the district court itself stated:
 
 
 52
 Here, the jury made the factual findings that Ultimate lacked the competence to perform the work for which Metro hired it, and that Metro knew, or in the use of reasonable care should have known, that Ultimate was not qualified to do the work. Under Kleeman and the Restatement, then, the jury found Metro negligent for hiring Ultimate to perform the transfer operation. This would appear to make Metro a direct tortfeasor.
 
 
 53
 Becker, slip op. at 8 (magistrate judge's May 23, 2002 Memorandum and Order).
 
 
 54
 Of course, a party's negligent selection of a contractor must be a cause of a plaintiff's injuries for liability to be created, and a potential complication arises in the present case with regard to causation. Perhaps based on the mistaken assumption that Metro would be only vicariously liable for Ultimate's negligence, the jury was not asked to determine whether Metro's negligence was a substantial or proximate cause of appellees' injuries. As noted, however, Metro's negligent selection of Ultimate led to direct, not vicarious, liability, and Metro was clearly entitled to put the causation issue to the jury in the liability phase of the trial. However, it did not. Metro, and evidently the magistrate judge, also mistakenly concluded that no finding of direct liability could be made because of the omission of a question as to whether Metro's negligent selection of Ultimate was a proximate cause of Becker's and Jurgens' injuries. We disagree, and for several reasons.
 
 
 55
 First, whether Metro's liability to appellees is vicarious or direct based on the answer to Question 4 is a matter of law, and we are not bound by stipulations of law. Kamen v. Kemper Fin. Servs. Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."). Second, when Metro failed to ask that the proximate cause question be submitted to the jury, it waived the issue. Rule 49(a) of the Federal Rules of Civil Procedure states:
 
 
 56
 Special Verdicts: The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact.... The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.
 
 
 57
 Fed.R.Civ.P. 49(a). Metro expressly agreed not to submit the proximate cause issue to the jury and cannot now claim, on this record, not to be directly liable for its own negligence.
 
 
 58
 Third, whatever error there may have been in not putting the proximate cause issue regarding Metro's negligence to the jury was not prejudicial, much less a miscarriage of justice. The following matters are clear from the record and from the jury's findings: (i) the injuries to Becker and Jurgens were caused by Ultimate's negligence in failing to provide a vacuum truck; (ii) Metro was negligent in selecting Ultimate when it knew that Ultimate would not provide such a truck; and (iii) therefore, there was factually no distinction between the injuries caused by the two tortfeasors because their negligence jointly resulted in the indivisible failure to provide a vacuum truck and thus the injuries suffered by appellees. Consequently, the lack of a specific proximate cause finding regarding Metro's negligence or of a jury apportionment of damages does not affect the result, and Metro and Ultimate are jointly and severally liable for the injuries sustained by Becker and Jurgens.
 
 
 59
 Under Section 433A of the Restatement, where two or more joint tortfeasors act independently and cause a distinct or single harm, for which there is a reasonable basis for division according to the contribution of each, then each is liable for damages only for its own portion of the harm. Restatement (Second) of Torts § 433A (1965). However, as in the instant case, where the acts of joint tortfeasors cause a single indivisible harm, damages are not apportioned, and each is liable in damages for the entire harm. See United States v. Alcan Aluminum Corp., 990 F.2d 711, 722 (2d Cir.1993); see also Restatement (Second) of Torts § 433A (1965) (Damages for harm are to be apportioned among two or more causes where (a) there are distinct harms, or (b) there is a reasonable basis for determining the contribution of each cause to a single harm. Damages for any other harm cannot be apportioned among two or more causes.) In the present case, therefore, there were no reasonable grounds on which to apportion damages between Metro and Ultimate for their joint failure to provide a vacuum truck, and joint and several liability exists.
 
 
 60
 d) Superseding, Intervening Negligence
 
 
 61
 Metro contends that Becker's and Jurgens' use of the portable pump to transfer the product from the CLARA P to the truck was, as a matter of law, the superseding, intervening cause of their injuries and that this conduct absolves Metro of liability. This argument essentially posits that Becker's and Jurgens' use of the portable pump was both negligent as a matter of law and not a foreseeable consequence of Metro's and Ultimate's failure to provide a vacuum truck. The district judge denied Metro summary judgment on this ground, and the jury found no negligence on the part of Becker or Jurgens in conducting the transfer operation.[4]
 
 
 62
 The weakness of Metro's substantive argument is facially obvious. Moreover, Metro faces considerable procedural hurdles in even raising this issue on appeal. Metro styles its appeal in this respect as being from the district court's denial of Metro's motion for summary judgment. However, the denial of a motion for summary judgment is moot in light of the fact that the case has since been tried before a jury. 19 James Wm. Moore et. al., 19-205 Moore's Federal Practice § 205.08[2])("a denial of summary judgment based on a genuine dispute of material facts becomes moot and unreviewable after trial since the dispute as to the facts has been resolved"). Any such argument now should: (i) have been preserved at trial; (ii) be based on the evidence given to the jury at trial; and (iii) must challenge the jury finding that Becker and Jurgens were not negligent. However, Metro did not raise the superseding, intervening cause issue at trial, did not ask for a jury answer on the issue, did not ask the magistrate judge to charge the issue to the jury, and made no post-verdict motion regarding the issue. "A party who fails to object to jury instructions or to the substance of special verdict questions to be put to the jury has no right to object to those matters on appeal." Simms v. Village of Albion, 115 F.3d 1098, 1109 (2d Cir.1997). Consequently, "[a]bsent objection, an error may be pursued on appeal only if it is plain error that may result in a miscarriage of justice, or in obvious instances of ... misapplied law." Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir.1992) (internal quotation and citation omitted) (ellipsis in original).
 
 
 63
 We see no possible miscarriage of justice here. Describing the application of superseding proximate cause, the New York Court of Appeals has noted that where
 
 
 64
 such an intervening cause interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated, it will prevent a recovery on account of the act or omission of the original wrongdoer.
 
 
 65
 Sheehan v. City of New York, 40 N.Y.2d 496, 387 N.Y.S.2d 92, 354 N.E.2d 832, 835-36 (1976) (internal quotation omitted). The Court of Appeals has further explained that in determining whether an intervening act disrupts the causal nexus between a defendant's negligent conduct and the plaintiff's injury,
 
 
 66
 liability turns upon whether the intervening act is a normal or foreseeable consequence of the situation created by the defendant's negligence. If the intervening act is extraordinary under the circumstances, not foreseeable in the normal course of events, or independent of or far removed from the defendants' conduct, it may well be a superseding act which breaks the causal nexus.
 
 
 67
 Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 434 N.Y.S.2d 166, 414 N.E.2d 666, 670 (1980) (internal citations omitted). Finally, "[b]ecause questions concerning what is foreseeable and what is normal may be the subject of varying inferences, as is the question of negligence itself, these issues generally are for the fact finder to resolve." Id.
 
 
 68
 In the instant matter, the jury could have found without effort that Becker's and Jurgens' injuries were foreseeable to Metro. Metro knew that the pump on the CLARA P was out of operation and that a vacuum truck should be used to transfer the petroleum from the barge. Metro also knew that Ultimate did not have any vacuum trucks but hired it anyway. That Jurgens and Becker used a portable pump to transfer the product because a vacuum truck had not been provided could easily have been viewed as a "normal or foreseeable consequence of the situation created by [Metro's] negligence," id.
 
 
 69
 e) Effect of the Ultimate Settlement
 
 
 70
 The final issue concerns the effect on Metro's liability of Becker's and Jurgens' settlement with Ultimate. The magistrate judge offset the judgment against Metro by the amount of the Ultimate settlement. Becker and Jurgens argue that the setoff was error.
 
 
 71
 We cannot reach this issue. As discussed above, Metro is a direct tortfeasor and jointly and severally liable with Ultimate for Becker's and Jurgens' injuries. Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 260 n. 7, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979); Alcan Aluminum, 990 F.2d at 722. Metro is liable, therefore, at least for the amount of the judgment, which equals appellees' uncompensated losses.
 
 
 72
 Becker and Jurgens ask us to increase the judgment by eliminating the setoff, but they have not cross-appealed. We cannot overlook this failure, SGS Control, 38 F.3d at 1286 (in absence of cross-appeal, court may affirm on alternative grounds but may not enlarge judgment), particularly when preserving the present judgment in their favor requires us to rely in part on a waiver by Metro. This option leaves the present judgment in place, a result that, whether or not arrived at by a tidy process, provides full compensation to the plaintiffs for what the jury found to be the total damages caused by the failure to provide a vacuum truck and is consistent with the various waivers of the parties.
 
 CONCLUSION
 
 73
 We hold that Metro is jointly and severally liable with Ultimate for Becker's and Jurgens' injuries. We do not reach questions regarding the propriety of the setoff in the absence of a cross-appeal. As a result, we affirm.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard W. Goldberg, of the United States Court for International Trade, sitting by designation
 
 
 [1]
 Question 2 of the verdict form involved a theory of liability that is now irrelevant in light of our disposition of this case
 
 
 [2]
 The magistrate judge addressed the issue as follows in his memorandum and order:
 I also note that it is not unusual for courts to assess liability against a vicariously liable party without regard to whether or not that party will later be indemnified by the negligent agent. Thus, this court need not consider whether Metro will later be able to receive indemnification from Ultimate, from the plaintiffs, or from another source. Whether or not Metro is entitled to indemnification, and whether it will be able, as a practical matter, to recover any monies it is due are questions not presently before the court.
 Becker, slip op. at 15 (magistrate judge's May 23, 2002 Memorandum and Order).
 
 
 [3]
 Stolt found Section 1292(a)(3) jurisdiction in a liability limitation case despite a "conditional" stipulation that provided no damages for the plaintiff if the district court should be affirmed, and $2,500 damages if it should be reversed. It noted, however, that:
 Absent the stipulation entered into by the parties, it is unclear whether we would have jurisdiction from [the district court's] grant of partial summary judgment.... However ... the orders entered by the district court do determine the rights and liabilities of the parties. Accordingly, we have jurisdiction under section 1292(a)(3).
 962 F.2d at 278 (internal quotation omitted).
 
 
 [4]
 The jury responded to interrogatories 11 and 13 as follows:
 In regard to the occurrence of August 18, 1995, has Metro established by a preponderance of the evidence that plaintiff [John Jurgens/Philip Becker] was negligent? NO.