Nos. 10-4934-cv (L); 10-4965-cv (Con)
*Chem One, Ltd. v. M/V Rickmers Genoa*

No. 10-4938-cv
*Atlantic Coast Yacht Sales, Inc. v. M/V* Rickmers Genoa

No. 10-4961-cv
*St. Paul Travelers v. M/V Rickmers Genoa*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2010

Docket Nos. 10-4934-cv (L); 10-4965-cv (Con);
No. 10-4938-cv
No. 10-4961-cv

Submitted: April 12, 2011          Decided: October 20, 2011

Chem One, Ltd., *et al.*,

*Plaintiffs-Appellant*s,

v.                                                          10-4934-cv (L)
                                                            10-4965-cv (CON)

M/V Rickmers Genoa, her engines, boilers, etc., *et al.*,

*Defendants*,

Rickmers-Linie GMBH & CIE. KG, Rickmers Genoa Schiffahrtsges mbH & Cie. KG,

*Defendants-Third-Party-Plaintiffs-*
*Appellants*,

Genoa Navigation Co., Ltd.,

*Third-Party-Plaintiffs-Appellants*,

ESM (Tianjin) Co., Ltd, ESM Group, Inc.,

*Defendants-Third-Party Defendants-*
*Cross Defendants-Cross Claimants-*
*Counter Claimants-Appellees*,

ESM II, Inc., *et al.*,

*Defendants-Third-Party-Defendants.*

Atlantic Coast Yacht Sales, Incorporated,

*Plaintiff*,

1

v.

ESM Group, Inc., ESM (Tianjin) Co., Ltd.,

*Defendants-Third-Party Defendants-*
*Cross Defendants-Cross Claimants-*
*Counter Claimant-Appellees,*

v.                                                                                                    10-4938-cv

Rickmers-Linie GMBH & CIE. KG, *et al.*,

*Defendants-Cross Claimants-*
*Cross Defendants-Counter Defendants-*
*Third-Party Plaintiffs-Appellants.*

─────────────────────────────

St. Paul Travelers, as subrogor of Foreign Tire Sales, Inc.,

*Plaintiff,*

Rickmers Genoa Schiffahrtsges mbH &Cie. KG, *et al.*,

*Third-Party Plaintiffs-Cross Claimants-*
*Cross Defendants-Counter Defendants-*
*Appellants,*

Genoa Navigation Company Ltd.,

*Third-Party Plaintiff-Counter Defendant-*
*Cross Defendant-Appellant,*

v.                                                                                                    10-4961-cv

M/V Rickmers Genoa, her engines, boilers, tackle, etc., *et al.*,

*Defendants,*

ESM (Tianjin) Co., Ltd.,

*Third-Party Defendant-Cross Claimant-*
*Counter Claimant-Counter Defendant-*
*Appellee,*

ESM Group, Inc.,

*Third-Party Defendant-Cross Claimant-*
*Counter Claimant-Appellee.*[*]

─────────────────────────────

[*] The Clerk of Court is directed to amend the captions as shown above.

Before:  KEARSE, MINER, and CHIN, <u>Circuit Judges</u>.

On their motion to dismiss appeals from two interlocutory orders for summary judgment entered in their favor in the United States District Court for the Southern District of New York (Preska, <u>C.J.</u>), or, in the alternative, for consolidation of the appeals in the captioned actions involving claims arising out of a maritime casualty, the ESM party defendants-appellees contend that the appeals are premature and not authorized by the maritime interlocutory appeal statute, 28 U.S.C. § 1292(a)(3) (2006), and that consolidation of the appeals is warranted by reasons of equity and economy.

Motion to dismiss DENIED.  Motion to consolidate GRANTED.

The appellants are directed to file a new scheduling notification within 14 days of the date of entry of this order pursuant to Second Circuit Local Rule 31.2.

Eugene J. O'Connor, Timothy Semenoro, Chalos, O'Connor & Duffy, LLP, Port Washington, New York, *for defendants-third-party plaintiffs-appellants* Genoa Navigation Co. LTD, Rickmers-Linie GMBH & CIE. KG, Rickmers Genoa Schiffahrtsges mbH & Cie. KG.

Christopher H. Dillon, Burke & Parsons, New York, New York, *for defendants-third-party defendants-cross defendants-cross claimants-counter claimants-appellees* ESM Group Inc., and ESM (Tianjin) Co., Ltd.

James A. Saville, Jr., Thomas E. Willoughby, Hill Rivkins LLP, New York, New York, *for plaintiffs-appellants* Chem One, Ltd., et al.

Christopher H. Dillon, Burke & Parsons, New York, New York, *for defendants-third-party defendants-cross defendants-cross claimants-counter claimants-appellees* ESM Group Inc., and ESM (Tianjin) Co., Ltd.

Eugene J. O'Connor, Timothy Semenoro, Chalos, O'Connor & Duffy, LLP, Port Washington, New York, *for defendants-cross claimants-cross defendants-counter defendants-third-party plaintiffs-appellants* Rickmers-Linie GMBH & CIE. KG, Rickmers Genoa Schiffahrtsges mbH & Cie. KG, Genoa Navigation Company Limited.

Christopher H. Dillon, Burke & Parsons, New York, New York, *for defendants-third-party defendants-cross defendants-cross claimants-counter claimant-appellees* ESM Group Inc., and ESM (Tianjin) Co., Ltd.

3

Eugene J. O'Connor, Timothy Semenoro, Chalos, O'Connor & Duffy, LLP, Port Washington, New York, *for defendants-cross claimants-appellants* Rickmers-Linie GMBH & CIE. KG, Rickmers Genoa Schiffahrtsges mbH & Cie. KG, Genoa Navigation Company Limited.

Christopher H. Dillon, Burke & Parsons, New York, New York, *for third-party defendants-cross claimants-counter claimants-appellees* ESM Group Inc., and ESM (Tianjin) Co., Ltd.

MINER, <u>Circuit Judge</u>:

The interlocutory appeals subject of the motion before us arise from conjoined multi-party actions in the United States District Court for the Southern District of New York (Preska, *C.J.*). The actions arise from a March 8, 2005, maritime disaster (the "Casualty"), during which the M/V Rickmers Genoa vessel (the "Rickmers" or "Rickmers Genoa") collided with another vessel, the M/V Sun Cross, in the Yellow Sea. The Rickmers Genoa sustained flooding in one of her cargo holds, and a few hours later, an explosion and a fire occurred in the No. 1 cargo hold of the Rickmers Genoa, resulting in the loss of cargo and a life.

Owners and subrogated insurers of certain cargoes (the "Cargo Interests") that had been destroyed during the Rickmers Genoa incident filed four individual admiralty actions in the Southern District, seeking to recover for damage to the cargo in addition to amounts that were paid in salvage, against, *inter alia*, the (1) entities that owned and chartered the Rickmers Genoa on the date of the maritime casualty, defendants and third-party-plaintiffs appellants, Genoa Schiffahrtsges mbH & Cie. KG, Genoa Navigation Company Ltd., and Rickmers-Linie GmbH & Cie. KG (the "Rickmers Interests"); (2) Rickmers Genoa; and (3) defendants-third-party-defendants-cross defendants-cross claimants-counter claimants-appellees ESM Group Inc. ("ESM Group") and ESM (Tianjin) Co., Ltd. ("ESMT") (collectively, the "ESM Parties"). The ESM Parties were sued in their capacities as the manufacturer, shipper, and/or owner of the cargo (the "ESM Group Cargo") that is believed to have caused the explosion in the No. 1 cargo hold. Among the Cargo Interests were

plaintiffs-appellants Chem One, Ltd., et al. (the "Chem One Plaintiffs" or "Chem One"),[1] the owners (or their subrogated underwriters) of a portion of the cargoes carried aboard the Rickmers Genoa. The Chem One Plaintiffs predicated their claims on theories of common law negligence and common law strict liability; the Carriage of Goods by Sea Act ("COGSA"), ch. 229, 49 Stat. 1207 (Apr. 16, 1936), 46 U.S.C. App'x § 1300–15 (re-codified at 46 U.S.C. § 30701 Notes, pursuant to Pub. L. 109-304, 120 Stat. 1485 (Oct. 6, 2006)); and breach of contract.

In turn, the Rickmers Interests filed a third-party action asserting liability on the part of the ESM Parties as manufacturer, shipper and/or owner of the ESM Group Cargo. The Rickmers Interests predicated their claims on theories that included strict liability failure to warn; negligent failure to warn; breach of contract; breach of warranty; negligent misrepresentation; indemnity; and detrimental reliance. They sought to recover damages in compensation for their losses, along with costs and disbursements, in the total amount of $40 million.

On November 8, 2007, the ESM Group filed a motion for summary judgment "seeking the dismissal of all claims asserted against it in the[] con[joined] maritime actions arising from the collision between the vessels Rickmers Genoa and the Sun Cross in the Yellow Sea on March 8, 2005." By Order dated March 31, 2009, the District Court denied in part and granted in part the ESM Group's motion for summary judgment, dismissing some of the direct claims against it to the extent that they were predicated on theories of (1) common law negligence; (2) common law strict liability; (3) COGSA; and (4) breach of contract. In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d 56, 77 (S.D.N.Y. 2009). The court denied the ESM Group's motion for summary judgment insofar as dismissal was sought of claims brought against the ESM Group for the alleged actions and omissions of ESMT, a wholly-owned subsidiary of ESM Group, under agency and veil piercing theories of liability. Id.

---

[1] The Chem One Plaintiffs include the following entities: Chem One Ltd., Commercial Metals Company, A.H.A. International Co., IKE Trading Co., Ltd., Hunter Douglas Metals Inc., National Oilwell L.P., Texas Wyoming Drilling, Inc., Graphite Electrodes Sales Company Inc., The Babcok & Wilcox Company, WestcoSystems, Inc., Toray Engineering Co., Ltd., The Crispin Company, Itochu Building Products Co., Inc., Bluelinx Corporation, Kurt Orban Partners LLC, BSTC Group Inc., Foster Wheeler North America Corp., Wego Chemical & Mineral Corp., Suewon Poongryuk Machinery Co. Ltd., General Electric Company, and Wintersun Group (USA).

On April 16, 2010, the ESM Parties filed a motion for summary judgment seeking dismissal of all remaining direct claims and third-party claims alleged against them. By Order dated November 4, 2010, the District Court granted in its entirety the motion for summary judgment and dismissed the remaining claims to the extent that they were predicated on theories of (1) strict liability; (2) negligent failure to warn; (3) breach of contract; and (4) detrimental reliance on a letter of indemnity. In re M/V Rickmers Genoa Litig., 752 F. Supp. 2d 379 (S.D.N.Y. 2010). In addition, because the court dismissed all claims against ESMT, the court accordingly dismissed the remaining causes of action, which had sought to hold ESM Group accountable for ESMT's actions and which the court had originally allowed to proceed in its March 31, 2009, Order. Id. at 393 n.12.

The Chem One Plaintiffs' Notice of Appeal, filed December 6, 2010, in the District Court, appealed both from the District Court's March 31, 2009, Order and the court's November 4, 2010, Order. In their capacity as third-party plaintiffs-appellants, the Rickmers Interests filed Notices of Appeal appealing from the Order entered November 4, 2010.

In the motion before us, dated January 4, 2011, the ESM Parties moved to dismiss all of the captioned interlocutory appeals as premature, or, in the alternative, to consolidate the captioned appeals. The ESM Parties argue that the March 31, 2009, and November 4, 2010, decisions of the District Court, which form the basis of these interlocutory appeals, do not dispose of all the claims in the underlying multi-party litigation and therefore are not eligible for appeal pursuant to Federal Rule of Civil Procedure 54(b). The ESM Parties also argue that because both the ESM Group and ESMT alleged counterclaims and cross-claims in the underlying multi-party litigation, which remain pending in the District Court, there is no basis for interlocutory maritime jurisdiction pursuant to 28 U.S.C. § 1292(a)(3), which provides us with jurisdiction over "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."

For the reasons that follow, we deny the ESM Parties' motion to dismiss the captioned appeals and grant the motion insofar as it seeks to consolidate the captioned appeals.

**BACKGROUND**

The following account of the facts is derived from the District Court's descriptions as set forth in its decisions of March 31, 2009, and November 4, 2010. In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d 56, 59–63 (S.D.N.Y. 2009); see also In re M/V Rickmers Genoa Litig., 752 F. Supp. 2d 379, 381–84 (S.D.N.Y. 2010). The District Court's recitation of the facts was derived from affidavits, Rule 56.1 Statements, testimony, and exhibits, with "all reasonable inferences . . . drawn in favor of the Non-Moving Parties." In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d at 59–60.

I.      Events Leading up to the M/V Rickmers Casualty

Defendant-appellee ESM Group is a limited liability corporation organized under the laws of Delaware and registered to do business in the State of New York. Id. at 60. Prior to 2005, ESM Group was affiliated with a group of related companies consisting of ESM II Inc., ESM II L.P., and ESM Manufacturing, L.P.[2] The ESM companies have or have had plants in several locations around the United States and abroad. The ESM companies produce, *inter alia*, a family of magnesium desulphurization reagent products, including a reagent product designated "SS-89." Id.

SS-89 is "[u]sed as a desulphurizing reagent in steelmaking . . . [and] is designed to be injected into molten iron ore to remove sulphur and make the steel less brittle. Because it removes sulphur and consists of approximately 89% magnesium, it is regularly identified under the English language trade name 'Super-Sul Mg-89.'" Id. Magnesium-based products liberate hydrogen gas when they come into contact with water, especially sea or salt water. Id. Hydrogen gas is flammable and susceptible to exploding. "According to a Material Safety Data Sheet ("MSDS") prepared by ESM Manufacturing L.P., SS-89 poses unusual fire and explosion hazards and should be kept dry and away from water and moisture." Id. (internal quotation marks omitted).

In 1996, ESM Group formed a wholly-owned subsidiary, defendant-appellee ESM (Tianjin) Co., Ltd. ("ESMT") in Tianjin, China. ESMT is a limited liability corporation organized under the laws of the People's Republic of China. ESM Group allegedly formed ESMT to save production

---

[2] On December 31, 2005, ESM Group became the corporate successor in interest of ESM II Inc. and ESM II L.P., both of which ceased to exist upon their merger into ESM Group.

7

costs, obtain lower prices for materials previously imported by ESM Group, and avoid United States' anti-dumping regulations concerning the manufacture of SS-89. ESM Group established the ESMT plant, trained ESMT personnel, transferred equipment from United States sites to the ESMT plant, and provided ESMT with the formula for SS-89. Id. ESM Group also brought ESMT's engineers and plant manager to the United States for technical and corporate training. ESM Group's CEO became President of ESMT. ESMT's Board of Directors included, at times exclusively, ESM Group employees. ESM Group directly paid ESMT's raw materials suppliers. ESM Group executives regularly visited the ESMT plant to monitor its operations, manufacturing, and shipping procedures. Id. at 61.

When ESM Group desired a shipment of a magnesium desulphurization reagent, such as SS-89, from ESMT, ESM Group would send ESMT a Purchased Material Service Specification outlining the chemical and physical make-up of the desired product. Aside from these purchase orders, ESM Group and the related United States companies corresponded with ESMT managers about conforming the chemical composition of SS-89 to ESM Group's requirements. Id.

Sometime in 2000, ESM Group created and provided ESMT with a draft MSDS for the SS-89 product. Although ESM Group alleges that it "did not get involved in providing recommendations to [EMST] regarding safety measures in the production, storage or transportation of products which [ESMT] produces," ESM Group, acting through its predecessor ESM II, directed ESMT to include its own MSDS for shipments of SS-89 and requested test data on the product from ESMT before shipments were to be made. Id. ESMT created its own MSDS for magnesium granules but apparently never created an MSDS for SS-89. ESMT's plant manager acknowledged that ESMT would have distributed an MSDS for SS-89 upon ESM Group's instruction to do so. Id.

In 2005, all of ESMT's production of SS-89 was sold to ESM Group, and ESM Group did not allow ESMT to sell SS-89 to other buyers. Of the other products that ESMT produced, only half were sold to buyers other than ESM Group. As such, 85% of ESMT total production was sold or supplied to ESM Group. ESMT's net profits in 2004 and 2005 were $10,000 and $45,000, respectively. ESMT did not report the payments ESM Group made to ESMT's raw material suppliers as taxable income. Id.

8

On or about January 25, 2005, ESM Group sent ESMT a purchase order for 900 metric tons of SS-89, "C.I.F. Baltimore."[3] Id. ESMT then arranged for the SS-89 to be shipped from the ESMT Tianjin plant to the United States aboard the Rickmers. ESMT contracted with defendant-third-party-defendant Pudong Trans U.S.A., Inc. ("Pudong" or "Pudong Trans USA"), a Non-Vessel Owning Common Carrier ("NVOCC"), to transport the SS-89 from the Tianjin plant to port in Xingang, China, where the Rickmers was docked. Id. at 62.

On or about March 3, 2005, Pudong issued ESMT a bill of lading[4] identifying ESMT as the shipper and identifying "To Order of Shipper" as the consignee. Id. Pudong then contracted with the Rickmers Interests to have the Rickmers carry the SS-89 from China to Camden, New Jersey. Sometime thereafter, the Rickmers Interests issued a bill of lading identifying Pudong as the shipper and identifying U.S. Shipping, Inc. ("U.S. Shipping") as the consignee. U.S. Shipping was to act as an intermediary NVOCC and releasing agent in the United States, "apparently tasked to transport the SS-89 from Camden to Baltimore." Id. The District Court found that there was "no evidence that ESMT informed any of these entities about the risks associated with transporting SS-89 by sea" and that "ESMT also did not provide an MSDS" on SS-89. Id.

On or about March 2, 2005, ESMT placed 600 metric tons of SS-89, of the 900 total metric tons of SS-89 ordered, into sacks. ESMT tested the sacks to ensure that they complied with U.S. Hazardous Material Regulations "dangerous when wet" criteria. Based on fresh-water testing, the results were normal and within United States regulatory standards. Id. ESMT placed the packages into containers. Then, Pudong picked up the containers and delivered them to the Xingang port that same day. On or about March 3, 2005, the containers were loaded aboard the Rickmers into Hold No. 1. Id.

---

[3] C.I.F., or "Cost, Insurance, and Freight," is a "commonly used international commercial term meaning 'that the seller delivers when the goods pass the ship's rail in the port of shipment. The seller must pay the costs and freight necessary to bring the goods to the named port of destination[; however,] the risk of loss of or damage to the goods, as well as any additional costs due to events occurring after the time of delivery, are transferred from the seller to the buyer.'" In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d 56, 61 n.5 (S.D.N.Y. 2009) (quoting Jan Ramberg, ICC Guide to Incoterms 2000, at 119 (1999)).

[4] A bill of lading is generally "[a] document acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods; a document that indicates the receipt of goods for shipment and that is issued by a person engaged in the business of transporting or forwarding goods." Black's Law Dictionary, at 188 (9th ed. 2009).

On March 8, 2005, after having departed from the Xingang port and apparently stopping at other Chinese ports, the Rickmers collided with the M/V Sun Cross in foggy weather in the Yellow Sea. Id. The Rickmers suffered damage to her forward double-hull plating, and flooding occurred in Hold No. 1, where the SS-89 was being stored. Approximately four hours after the collision, an explosion occurred in Hold No. 1, and a fire ensued. The containers of SS-89 were completely destroyed. Id. The Chief Officer of the Rickmers died in the explosion. In re M/V Rickmers Genoa Litig., 752 F. Supp. 2d at 381. The Rickmers's Captain had not been aware, until the fire broke out, that the SS-89 was "some kind of a mixture with magnesium." Id. at 384 (internal quotation marks omitted).

II.     Proceedings in the District Court

In the wake of the disaster, the Cargo Interests — i.e., the owners and subrogated insurers of cargoes, other than the ESM Group Cargo, that had been destroyed during the Rickmers Casualty — filed four individual admiralty actions in the District Court, pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, seeking damages for their losses. Specifically, (1) the Chem One Plaintiffs; (2) plaintiff Shandong Industrial, Inc.;[5] (3) plaintiff St. Paul Travelers; and (4) plaintiff Atlantic Coast Yacht Sales, Inc. (collectively, the "Cargo Interests"), each filed complaints against, *inter alia*, (1) the Rickmers Genoa and the M/V Sun Cross vessel; (2) the Rickmers Interests; (3) the ESM Group and ESMT; and (4) defendant Pudong Trans USA. The foregoing actions were joined for consideration in the District Court.

On February 17, 2006, the ESM Group filed (1) counterclaims and cross-claims against the Rickmers Interests for failing properly to handle and carry the ESM Group Cargo and for breaching their duty of care and thereby allegedly causing the destruction of that cargo; (2) cross-claims against Pudong Trans USA for breaching its duty of care as the common carrier of the cargo; and (3) counterclaims against the Chem One Plaintiffs for failing to warn the parties about the "dangerous" nature of unspecified chemicals contained in the Chem One Plaintiffs' cargo onboard the Rickmers

---

[5] In the case of Shandong Industrial, Inc. v. M/V Rickmers Genoa, et al., No. 05-cv-6226 (LAP), a Stipulation and Order of Dismissal was entered April 29, 2010, pursuant to a settlement agreement between the parties, discontinuing the case in its entirety, including all counterclaims, with prejudice and without costs to any party. Stipulation and Order of Dismissal, Shandong Industrial, Inc. v. M/V Rickmers Genoa, et al., No. 05-cv-6226 (LAP) (S.D.N.Y. April 29, 2010), ECF No. 96.

vessel. See Counterclaims and Cross-Claims of ESM Group Inc., Chem One, Ltd. v. M/V Rickmers Genoa et al., No. 05-cv-4261 (LAP) (S.D.N.Y. Feb. 17, 2006), ECF No. 19.

On April 25, 2006, the Rickmers Interests filed an amended third-party complaint against (1) the ESM Group and ESMT; (2) Pudong Trans USA; and (3) U.S. Shipping.[6] In that complaint, the Rickmers Interests alleged, *inter alia*, that the ESM Parties had failed to provide any warning as to the dangerous nature of the ESM Group Cargo.

On November 22, 2006, ESMT counterclaimed against the Chem One Plaintiffs to recover for the loss of the ESM Group Cargo onboard the Rickmers Genoa. In the counterclaims, ESMT also sought contribution or indemnity from the Chem One Plaintiffs to the extent that ESMT might be liable for any judgment against it. See generally In re M/V Rickmers Genoa Litig., Nos. 05-cv-4261 (LAP); 05-cv-6226 (LAP); 05-cv-8841 (LAP); 05-cv-9472 (LAP), 2011 WL 2118743, at *1–2 (S.D.N.Y. May 26, 2011) (Amended Memorandum and Order) (explaining that the "Rickmers Interests also sued ESM Group and ESMT, as consignee and shipper, respectively, in a third-party action, alleging that they were liable because magnesium can explode when put in contact with water. Cross-claims and counterclaims abounded."); In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d 56, 59 n.1 (S.D.N.Y. Mar. 31, 2009) ("[A]dditional cross-claims and counter-claims are asserted against other cargo interests whose cargo may have caused or contributed to the explosion and fire aboard the RICKMERS. So far, no party other than ESM Group has made a dispositive motion in this litigation.").

In a separate filing, also on November 22, 2006, ESMT alleged cross-claims against (1) defendants-third party plaintiffs Rickmers Interests for contribution, indemnity, and/or recoupment "for all or part of any liability or judgment against [ESMT], and/or any related payment by [ESMT] in relation to claims arising from the Casualty"; and (2) defendant-third-party defendant Pudong Trans USA, as NVOCC, for contribution, indemnity, and/or recoupment from "for all or part of any liability or judgment against [ESMT], and/or any related payment by ESM Group in relation to

[6] By Stipulation and Order, dated May 22, 2009, and signed by the District Court June 3, 2009, any and all claims, cross-claims, and counterclaims "by and between U.S. Shipping and the undersigned parties" were dismissed without prejudice and without costs. Stipulation and Order to Dismiss US Shipping Without Prejudice, Chem One, Ltd. v. M/V Rickmers Genoa et al., No. 05-cv-4261 (LAP) (S.D.N.Y. June 4, 2009), ECF No. 141.

11

the claims arising from the Casualty." Cross-Claims of ESM Tianjin Against the Rickmers Interests and Pudong Trans USA, Chem One, Ltd. v. M/V Rickmers Genoa et al., No. 05-cv-4261 (LAP) (S.D.N.Y. Nov. 22, 2006), ECF No. 63.

A year later, in November 2007, the ESM Group moved for summary judgment, seeking to dismiss all of the claims asserted against it by the Rickmers Interests and the Chem One Plaintiffs. The claims against the ESM Group were predicated on theories of: (1) common law negligence (general negligence and failure to warn); (2) common law strict liability; (3) COGSA; (4) breach of contract; and (5) agency and veil piercing. In an Order dated March 31, 2009, the District Court granted the motion in part and denied the motion in part. In re M/V Rickmers Genoa Litig., 622 F. Supp. 2d at 77. In doing so, the court dismissed (1) the common law negligence claims because the ESM Group did not owe a duty of care to any of the plaintiffs, as ESM Group was a C.I.F. buyer owing no tort-based duty under federal maritime common law to warn of risks associated with the buyer's purchased cargo, id. at 64–66 (citing Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1077 (2d Cir. 1993)); (2) the common law strict liability claims because there was no legal authority for holding the ESM Group, a C.I.F. buyer, liable simply because of ESM Group's knowledge of SS-89's dangerous characteristics, id. at 66 (citing In re M/V DG Harmony, 533 F.3d 83 (2d Cir. 2008) (discussing the law of shipper strict liability for accidents relating to the shipment of dangerous goods)); (3) the COGSA claims against ESM Group because COGSA was inapplicable as it "is fundamentally concerned with efficiently and equitably allocating the contractual rights and obligations of carriers and shippers who have actually contracted with each other," and ESM Group "was a mere consignee," id. at 69–70; and (4) the breach of contract claim because there was "no evidence that ESM Group consented to be bound by" the bill of lading between ESMT and Pudong Trans USA or the bill of lading between Pudong Trans USA and the Rickmers Interests, id. at 72–73.

The District Court permitted the claims against ESM Group to proceed to the extent that the ESM Group might be liable for the acts of ESMT. Id. at 73. Specifically, the court found, with respect to the claims predicated on theories of federal maritime common law of agency and veil piercing, that the evidence was "sufficient to create a triable issue as to whether veil piercing is warranted," id. at 76, i.e., whether "ESM Group and ESMT were sufficiently related to hold each

liable for the other's torts, contracts, and statutory obligations," id. at 73. The court found that the "evidence tend[ed] to show that ESMT was transacting ESM Group's business rather than its own business. Taking this evidence as a whole, it is sufficient to create a triable issue as to whether veil piercing is warranted in this case." Id. at 76.

On April 16, 2010, the ESM Parties collectively moved for summary judgment to dismiss all the remaining claims alleged against them. On November 4, 2010, the District Court granted the ESM Parties' motion for summary judgment and dismissed all remaining claims alleged against them by the Rickmers Interests and Cargo Interests. The court started its analysis with the four claims alleged by third-party plaintiffs Rickmers Interests. First, the court rejected the strict liability claims, alleged pursuant to § 4(6) of COGSA, 46 U.S.C. § 30701 Note § 4(6) (2006), against the ESM Parties because the Rickmers Interests "either actually or constructively knew that the SS-89 cargo had certain dangerous propensities and nevertheless exposed the cargo to the condition that activates those dangerous propensities." See In re M/V Rickmers Genoa Litig., 752 F. Supp. 2d 379, 386 (S.D.N.Y. 2010) (citing and discussing In re M/V DG Harmony, 533 F.3d 83 (2d Cir. 2008); Contship Containerlines, Ltd. v. PPG Indus., Inc., 442 F.3d 74, 78 (2d Cir. 2006)). Second, the court dismissed the claims for negligent failure to warn because "ESMT had no duty to warn [the] Rickmers [Interests] of any specific dangers because the SS-89 presented no dangers of which Rickmers could not reasonably have been aware." Id. at 391.

Third, as to the Rickmers Interests' claim that ESMT breached both (1) a bill of lading issued by Rickmers to Pudong Trans USA and (2) a bill of lading issued by Pudong Trans USA to ESMT, the court dismissed the breach of contract claim because (1) ESMT was generally "not bound by the Rickmers-Pudong bill of lading . . . [as] Pudong Trans [USA] was the shipper and Rickmers was the carrier," id., and (2) the Rickmers Interests had "no standing to enforce" the Pudong-ESMT bill of lading, to which the Rickmers Interests were non-parties, id. at 392. Fourth, the court rejected the Rickmers Interests' claim of detrimental reliance based on a February 22, 2005, letter of indemnity drafted by ESMT, because the court found that the Rickmers Interests were unable to establish that they had relied to their detriment on any "letter[] of indemnity when [they] accepted the SS-89" on the Rickmers Genoa. Id. at 393.

13

The District Court next addressed the strict liability and negligent-failure-to-warn claims alleged by the Cargo Interests against the ESM Parties, including ESMT, and ultimately dismissed those claims. In re M/V Rickmers Genoa Litig., 752 F. Supp. 2d at 393–95. The court determined that these claims should be dismissed because the evidence revealed that the Cargo Interests knew or should have known of the hazardous nature and dangerous propensities of the ESM Group Cargo and that this knowledge or constructive knowledge therefore barred the claims. See In re M/V Rickmers Genoa Litig., 752 F. Supp. 2d at 386–391, 395. Finally, because the District Court dismissed all claims against ESMT, the court dismissed the remaining causes of action that had sought to hold ESM Group accountable for ESMT's actions and that the court had originally allowed to proceed in its March 31, 2009 Order. Id. at 393 n.12. The court directed that "[t]he remaining parties sh[ould] confer and inform the [c]ourt by [mid-November 2010] how they propose to proceed." Id. at 395.

On December 3, 2010, the Rickmers Interests filed timely notices of appeal from the District Court's interlocutory November 4, 2010, Order, resulting in the opening of docket numbers 10-4934-cv, 10-4938-cv, and 10-4961-cv in this Court. On December 6, 2010, the Chem One Plaintiffs filed a timely notice of appeal from both the District Court's November 4, 2010, and March 31, 2009, decisions,[7] resulting in the opening of docket number 10-4965-cv in this Court. Following the District Court's November 4, 2010, Order, the Rickmers Interests, by endorsed letter dated November 17, 2010, "on behalf of all the parties," informed the court that the loss-of-cargo claims asserted against them by the Chem One Plaintiffs, Atlantic Coast Yacht Sales, and ESM Group remained to be adjudicated.

As to the remaining claims for loss of cargo asserted against them, the Rickmers Interests, on February 18, 2011, moved for partial summary judgment with respect to the interpretation of the terms in their bill of lading concerning the issue of the limitation of liability of a carrier engaged to transport goods. The Rickmers Interests contended that under their bill of lading and COGSA, a package limit of $500 per package should be applied to any claim for damage or loss of cargo

---

[7] Because the last day to file a notice of appeal fell on a Saturday, the last day to file was extended until Monday, December 6, 2010. See Fed. R. App. P. 26(a)(1)(C) and (3).

14

transported pursuant to the Rickmers Interests' bill of lading between Pudong Trans USA and the Rickmers Interests. See generally COGSA § 4(5), 46 U.S.C. § 30701 Note ("Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package . . . .").

On March 4, 2011, the ESM Group filed a memorandum of law in opposition to the Rickmers Interests' February 18, 2011, motion for partial summary judgment and in support of ESM Group's cross-motion for summary judgment as to its counterclaims and cross-claims against the Rickmers Interests. In its opposition and cross-motion for partial summary judgment, the ESM Group opposed the Rickmers Interests' motion seeking to limit the Rickmers Interests' liability to $500 per package and sought to pursue their claims in full. The ESM Group argued that under the plain language of the Rickmers Interests' bill of lading, German law should be applied, and, therefore, with regard to ESM Group's counterclaims and cross-claims against the Rickmers Interests, that the ESM Group should be entitled to recover its actual loss of the ESM Group Cargo and that it was not limited to the $500 per package cap under COGSA.

By Order, dated May 26, 2011, the District Court granted ESM Group's cross-motion for summary judgment and denied the Rickmers Interests' motion for partial summary judgment, thereby allowing the ESM Group to proceed with their counterclaims and cross-claims against the Rickmers Interests. In re M/V Rickmers Genoa Litig., Docket Nos. 05-cv-4261 (LAP); 05-cv-6226 (LAP); 05-cv-8841 (LAP); 05-cv-9472 (LAP), 2011 WL 2118743 (S.D.N.Y. May 26, 2011). The court determined that the international Hague-Visby Rules, which were amendments to the Hague Rules of 1924, International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading (Brussels Aug. 25, 1924) — and not COGSA — governed the Rickmers Interests' limitation of liability of the claims for loss or damage of cargo. Id. at *6; see also id. at *1 (noting that COGSA, 46 U.S.C. § 1304(5), "provides for a lower limitation of liability than does German law, which applies the amendments to the Hague Rules of 1924" and that "[t]he parties hope that the resolution of this legal issue will have a domino effect as they try to settle").

On June 9, 2011, the Rickmers Interests moved the District Court for reconsideration of its May 26, 2011, Order, and the ESM Group opposed that motion by filing a Memorandum of Law in

15

support of that opposition on June 23, 2011. On July 8, 2011, the District Court denied the Rickmers Interests' motion for reconsideration, finding that they "rehash[ed] the arguments made in the summary judgment papers." Order Denying Motion for Reconsideration, In re M/V Rickmers Genoa Litig., No. 05-cv-4261 (S.D.N.Y. July 8, 2011), ECF No. 222. The court also denied the Rickmers Interests' request for certification of an interlocutory appeal from the May 26, 2011, Order. Id.

III.     Proceedings in this Court

By motion dated January 4, 2011, the ESM Parties moved to dismiss all appeals in this Court for lack of jurisdiction on the grounds that the appealed-from orders are non-final and this Court lacks jurisdiction under the admiralty interlocutory provision set forth in 28 U.S.C. § 1292(a)(3) because claims remain in the District Court. In their motion, the ESM Parties also moved this Court to consolidate the appeals in the event that their motion to dismiss is denied. The ESM Parties argue that Section 1292(a)(3) should be construed to require that all of the rights and liabilities of all parties must be adjudicated by the District Court to provide this Court with appellate jurisdiction over these interlocutory appeals. The Rickmers Interests and the Chem One Plaintiffs oppose the ESM Parties' motion to dismiss, contending that in this case, we have interlocutory jurisdiction under Section 1292(a)(3) because the District Court has resolved all claims against the ESM Parties. Rickmers Interests and the Chem One Plaintiffs do not oppose consolidation of the present appeals.

**ANALYSIS**

I.     Interlocutory Admiralty Jurisdiction

"As a general rule, we lack jurisdiction to hear an appeal 'unless the decision is, or is embodied in, an order or judgment that is "final" within the meaning of 28 U.S.C. § 1291.'" Swede v. Rochester Carpenters Pension Fund, 467 F.3d 216, 219 (2d Cir. 2006) (quoting Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 171 (2d Cir. 2002)). Under an exception to the final judgment rule, which is relevant to these appeals, we review "[i]nterlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in

16

which appeals from final decrees are allowed." 28 U.S.C. § 1292(a)(3) (2006).[8] "[T]here are three prerequisites to invocation of" interlocutory appellate jurisdiction under Section 1292(a)(3): "(1) the underlying case must be an admiralty case 'in which appeals from final decrees are allowed[';] (2) the appeal must be from an interlocutory order or decree of the district court; and (3) the order or decree must have determined 'the rights and liabilities of the parties.'" Wingerter v. Chester Quarry Co., 185 F.3d 657, 663 (7th Cir. 1998) (quoting Foulk v. Donjon Marine Co., Inc., 144 F.3d 252, 255 (3d Cir. 1998)); see also Thypin Steel Co. v. Asoma Corp., 215 F.3d 273, 279–80 (2d Cir. 2000); accord Becker v. Poling Transp. Corp., 356 F.3d 381, 387 (2d Cir. 2006) (quoting Thypin Steel Co., 215 F.3d at 280).

"The Section 1292(a)(3) exception to the final judgment rule has its origins in the once common admiralty practice of referring the determination of damages to a master or commissioner after resolving the issue of liability." Becker, 356 F.3d at 387 (citing Roco Carriers, Ltd. v. M/V Nurnberg Express, 899 F.2d 1292, 1297 (2d Cir. 1990)). "It provides appellate 'jurisdiction . . . when the court below, as is customary in admiralty, has entered an interlocutory decree deciding the merits of the controversy between the parties, but has left unsettled the assessment of damages or other details required to be determined prior to entry of a final decree.'" Id. (quoting Thypin Steel, 215 F.3d at 280). "[T]he crucial inquiry for purposes of Section 1292(a)(3) is whether the [district court's] judgment has determined the rights and liabilities of the parties, which . . . means 'deciding the merits of the controversies between them.'" Id. at 387–88 (quoting In re Wills Lines Inc., 227 F.2d 509, 510 (2d Cir. 1955)).

It is undisputed that the present appeals arose under the District Court's admiralty jurisdiction and that the orders from which the parties have appealed are interlocutory in nature. See Wingerter, 185 F.3d at 666 (explaining that "the preferred method to designate the action as being

---

[8] 28 U.S.C. § 1292(a)(3) provides in relevant part:

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from . . .

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

17

one in admiralty is by an express reference to Fed. R. Civ. P. 9(h)" in the complaint). Moving for dismissal of these admiralty appeals, the ESM Parties contend that we lack jurisdiction under Section 1292(a)(3) because the District Court has not determined all of the rights and liabilities of all of the parties. In support of this claim, the ESM Parties note that although the District Court dismissed all of the direct and third-party claims made against them, the ESM Parties' counterclaims against the Rickmers Interests and Chem One Plaintiffs for the loss of cargo, as well as claims by several of the Cargo Plaintiffs against the Rickmers Interests, remain to be adjudicated. The ESM Parties further note that cross-claims by ESM Group against Pudong Trans USA and cross-claims by ESMT against the Rickmers Interests and Pudong Trans USA are still pending. The ESM Parties therefore contend that "the statute should be construed to require that the rights and liabilities of 'the parties' collectively, as in the entire group, need to be decided by the district court in order to qualify for an interlocutory appeal." Reply Mem. of ESM Parties at 2.

In Thypin Steel, we noted and seemingly rejected the Eleventh Circuit's conclusion in Bradford Marine, Inc. v. M/V Sea Falcon, 64 F.3d 585, 587–88 (11th Cir. 1995), that"[a]ll the rights and liabilities of all the parties do not need to be determined before such an order is appealable." Bradford Marine, 64 F.3d at 588 (citing Nichols v. Barwick, 792 F.2d 1520, 1522 (11th Cir. 1986)); see also Aparicio v. Swan Lake, 643 F.2d 1109, 1113 n.6 (5th Cir. 1981). We stated in Thypin Steel "that a narrow construction of [Section] 1292(a)(3) better comports with the historical origin of the exception and this Circuit's precedent." Thypin Steel, 215 F.3d at 280. In this connection, we opined that appellate jurisdiction exists over an interlocutory admiralty appeal where a district court "has entered an interlocutory decree deciding the merits of the controversy between the parties, but has left unsettled the assessment of damages or other details required to be determined prior to entry of a final decree." Id. at 279–80 (internal quotation marks omitted). We also recognized that "a noted commentator has suggested [that] 'arguments for expansive interpretation of [Section] 1292(a)(3) are offset by the availability of . . . Rule . . . 54(b) and the more recent adoption of [Section] 1292(b), which allows interlocutory appeals on permission of the trial court and appellate court in admiralty cases as well as in other cases." Id. at 280 (quoting 16 Charles Alan Wright et al., Federal Practice and Procedure § 3927 (2d ed. 1996)). But see 16 Wright et al., supra, §

3927 ("Only Congress can decide whether these alternative means of appeal, not available in 1926 when [Section] 1292(a)(3) was adopted, justify repeal of [Section] 1292(a)(3). And no doubt it is too late to limit the statute so as to permit interlocutory appeal only from orders that dispose of all the rights and liabilities asserted among all the parties." (footnote omitted)).

Notwithstanding the foregoing, interpretation of the scope of Section 1292(a)(3) was not necessary in Thypin Steel because in that case, we ultimately held that there was no appellate jurisdiction under Section 1292(a)(3) over a cross-appeal seeking interlocutory review of a district court's dismissal of one defendant for lack of personal jurisdiction, reasoning that the dismissal "only affected how and where [the defendant]'s rights would be determined but did not conclusively resolve the parties' substantive rights or liabilities or the merits of the underlying controversy." Thypin Steel, 215 F.3d at 281. The dismissal did not preclude the plaintiff from "commencing an independent action against [the defendant] in another forum." Id. Further, the district court's dismissal of two claims against another defendant for failure to state a claim in Thypin Steel did not require this Court to examine the scope of Section 1292(a)(3) because the defendant's "rights and liabilities as to the bill of lading," and the "essential question of liability," had yet to be determined. Id. at 281–82.

Accordingly, we reject the contention of the ESM Parties that language in Thypin Steel somehow limits Section 1292(a)(3) to interlocutory appeals only from orders that dispose of all of the rights and liabilities asserted among all of the parties. Thypin Steel's discussion of the scope of Section 1292(a)(3) was dictum. It was not necessary in that case to suggest that Section 1292(a)(3) might be limited to dispositions of all the rights and all of the liabilities asserted among all the parties when the cross-appeal at issue in Thypin Steel did not fully resolve the liabilities of even a single party. See Alsol v. Mukasey, 548 F.3d 207, 218–19 (2d Cir. 2008) (rejecting the discussion of an issue in a prior case because it "was not necessary to [the Court's] holding and [therefore] dictum" (citing Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 106 n.19 (2d Cir. 2004); Pierre N. Leval, Judging Under the Constitution: Dicta about Dicta, 81 N.Y.U. L. Rev. 1249, 1257 (2006))); United States v. Garcia, 413 F.3d 201, 232 n.2 (2d Cir. 2005) (Calabresi, J., concurring) (noting that discussing a legal issue that is "not necessary to decide the case" is mere dicta and

19

should not be treated as binding on future panels).[9]

In our view Thypin Steel's dictum is at odds with the plain language of Section 1292(a)(3), which "does not say that all rights and liabilities of [all] the parties must be decided before an appeal can be taken," Deering v. Nat'l Maint. & Repair, Inc., 627 F.3d 1039, 1042 (7th Cir. 2010) (emphasis in original). Our sister Circuits support this interpretation. See, e.g., In re Compl. of PMD Enter., Inc., 301 F.3d 147, 149 (3d Cir. 2002) ("Our case law on interlocutory appeals in admiralty establishes that the language of [Section] 1292(a)(3) regarding a final determination of rights and liabilities applies to situations such as the dismissal of parties from the litigation, grants of summary judgment (even if not to all parties), and other cases where a claim has somehow been terminated."); Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd., 79 F.3d 480, 483 (5th Cir. 1996) ("In an admiralty case, it is not necessary for the order appealed from to have determined all the rights and liabilities of all the parties before such an order is appealable under [Section] 1292(a)(3)."); Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel, 833 F.2d 1059, 1064 (1st Cir. 1987) ("For an interlocutory order to be appealable under . . . [Section] 1292(a)(3), it need not address all of the rights and liabilities at issue in the litigation."). "According to the majority view," to which we now adhere, Section 1292(a)(3) "permits [an] interlocutory appeal when rights and liabilities have been determined between two of a number of parties, notwithstanding that disputes remain between one of them and others, as, for example, between the plaintiff and one of several defendants, or between [a] defendant and third-party defendant." 29 James W. Moore, Moore's Federal Practice § 710.05 (3d ed. 2010) (internal footnotes omitted).[10] Accordingly, we hold that when a district court has determined all of the

---

[9] None of the other admiralty cases cited by the ESM Parties involving dismissals of appeals by this Court help their argument. Unlike the cases at bar, in which the District Court has adjudicated the merits of all liability claims against the ESM Parties, those admiralty cases involved attempted appeals from: the denial of a motion to dismiss, see Blue Water Yacht Club Ass'n v. N.H. Ins. Co., 355 F.3d 139 (2d Cir. 2004); an interlocutory order refusing an interlocutory default decree upon a petitioner's failure to file additional security, see In re Wills Lines, 227 F.2d 509 (2d Cir. 1955); and an order staying an admiralty action in the district court pending arbitration, see Lowry & Co. v. S. S. Le Moyne D'Iberville, 372 F.2d 123 (2d Cir. 1967); see also Tradax Ltd. v. M.V. Holendrecht, 550 F.2d 1337 (2d Cir. 1977) (same), abrogated on other grounds by Farrell Lines Inc. v. Ceres Terminals Inc., 161 F.3d 115 (2d Cir. 1998).

[10] The Ninth Circuit has taken a particularly expansive approach with respect to Section 1292(a)(3), holding that a determination as to a party's actual liability is not required before an appeal can be taken. See Wallis v. Princess Cruises, Inc., 306 F.3d 827, 833–34 (9th Cir. 2002) (concluding that there was appellate admiralty jurisdiction even though "only the validity and applicability of a [contract] provision limiting liability ha[d] been determined"). But see Evergreen Int'l (USA) Corp. v. Standard Warehouse, 33 F.3d 420, 424 (4th Cir. 1994) (holding that Section 1292(a)(3)

20

liabilities of a party in an admiralty action, and the district court's decision "is unaffected by" any remaining claims, interlocutory appellate jurisdiction lies under Section 1292(a)(3). See Becker, 356 F.3d at 388; accord Brotherhood Shipping Co. v. St. Paul Fire & Marine Ins. Co., 985 F.2d 323, 324–25 (7th Cir. 1993) (concluding that the court of appeals had jurisdiction over appeal from the district court's grant of summary judgment dismissing shipowner's claims against a city, even though other claims remained pending and the court's order was thus a "partial dismissal only"); cf. Francis ex rel. Francis v. Forest Oil Corp., 798 F.2d 147, 149 (5th Cir. 1986) ("As a general rule, whenever an order in an admiralty case dismisses a claim for relief on the merits[,] it is appealable under Section 1292(a)(3).").

The fact that the ESM Parties have their own counterclaims and cross-claims pending in the District Court does not affect whether we may exercise appellate jurisdiction under Section 1292(a)(3). In Becker v. Poling Transportation Co., we held that we had jurisdiction under Section 1292(a)(3) over an appeal from a magistrate judge's determination that the jury had found a purchaser vicariously liable for injuries sustained by two seamen, even though the purchaser's cross-claim for contribution against a third-party defendant remained pending, "because its liability to [the seamen] . . . ha[d] been determined and [was] unaffected by the cross-claim or the indemnification clause in [a] . . . settlement." 356 F.3d at 388. In Becker, we noted that the Eleventh Circuit had held that in Nichols v. Barwick, 792 F.2d 1520, 1522 (11th Cir. 1986), that it had jurisdiction under Section 1292(a)(3) even though no final decision had been entered on the defendants' third-party complaints for indemnity and contribution. Becker, 356 F.3d at 388 (citing Nichols, 792 F.2d at 1522 ("Not all the rights and liabilities of all the parties need be determined before such an order is appealable.")).

In this case, the District Court's adjudication of liability as to the ESM Parties was resolved in the court's decisions of March 31, 2009, and November 4, 2010, in which the court dismissed all direct and third-party claims against the ESM Parties. Those determinations are "unaffected by" any remaining counterclaims or cross-claims that the ESM Parties have alleged. See Becker, 356 F.3d at

should be construed narrowly to limit appeals to those cases in which liability has been determined). We express no view as to this conflict.

21

388; see also Barbarino v. Stanhope S.S. Co., 151 F.2d 553, 555 (2d Cir. 1945) (holding that a district court order dismissing a petition to implead a third-party was appealable, reasoning that, "[a]lthough the decree was not, indeed, final, it did 'determine' the 'rights' of the parties, and is therefore appealable" under 28 U.S.C. § 227, i.e., Section 1292(a)(3)'s precursor); cf. Allen N. Spooner & Son, Inc. v. Conn. Fire Ins. Co., 297 F.2d 609, 610 (2d Cir. 1962) (per curiam) (dismissing for lack of jurisdiction an interlocutory appeal from the district court's dismissal of the defendant insurance company's impleading petition against a tugboat owner, reasoning that neither the merits of the plaintiff's claim against the insurer, nor the insurer's defenses to that claim, had been adjudicated; and concluding that "the merits of the impleading petition were not adjudicated by the ruling below").

The ESM Parties' contention that an interlocutory appeal "would likely result in disruptive appellate review" simply has no basis in the record or fact. The parties cannot dispute that "there is nothing left to litigate at the District Court level with respect to the claims . . . against ESM Group and ESM Tianjin." Thus, given that the District Court has determined conclusively all of the claims against the ESM Parties, and that decision is unaffected by any remaining claims, we properly may exercise appellate jurisdiction over the present appeals under Section 1292(a)(3). Delaying appeal merely because a "final judgment" as to all of the claims against all of the parties has not been issued would defeat the interlocutory nature of Section 1292(a)(3) and effectively render the statute a nullity in the modern era of litigation in which admiralty suits frequently involve multiple parties and claims.

II.     Consolidation

"When the parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by" this Court. Fed. R. App. P. 3(b)(2). We have explained that, "[i]n assessing whether consolidation is appropriate in given circumstances," a court "should consider both equity and judicial economy." Devlin v. Transp. Commc'ns Int'l Union, 175 F.3d 121, 130 (2d Cir. 1999) (reviewing a district court's decision not to consolidate cases). However, "efficiency cannot be permitted to prevail at the expense of justice — consolidation should be considered when savings of expense and gains of efficiency can be accomplished without sacrifice of justice." Id. (emphasis in

22

original) (internal quotation marks omitted).  Accordingly, we grant the motion brought by the ESM Parties insofar as they seek consolidation because the appeals arise from the same conjoined multiparty litigation in the District Court, and consolidation would be both efficient and equitable for the disposition of the appeals.  Moreover, consolidation is unopposed.

III.    Conclusion

Upon due consideration, it is hereby **ORDERED** that the motion to dismiss is **DENIED**, Becker, 356 F.3d at 388, and the motion is **GRANTED**, in part, insofar as the appellees seek consolidation, and the appeals docketed under 10-4934-cv, 10-4938-cv, 10-4961-cv, and 10-4965-cv are hereby consolidated.